T. B. HARMS & FRANCIS, DAY & HUNTER v. STERN et al.

(Circuit Court of Appeals, Second Circuit. February 15, 1916.)

No. 56.

1. COPYRIGHTS ☜85—INJUNCTION—DENIAL OF RELIEF—FAILURE TO DO EQUITY.

R. agreed to sell and assign to defendant all musical compositions written during the period of five years. In violation of his legal and moral obligation under this agreement, he assigned a musical composition to other parties, who had it copyrighted. *Held*, that his assignees, who stood in his shoes, were not entitled to an injunction restraining defendants from infringing the copyright, as R. committed iniquity, and did not come into court with clean hands, and his misconduct was, for the purposes of the suit, the misconduct of those standing in his shoes.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 78; Dec. Dig. ☜85.]

2. EQUITY ☜54—DENIAL OF RELIEF—UNCONSCIONABLE RELIEF.

A court of equity is a court of conscience, and within the scope of its powers is governed by its own rules, and withholds aid whenever it is asked to do that which it deems to be against conscience.

[Ed. Note.—For other cases, see Equity, Dec. Dig. ☜54.]

3. COPYRIGHTS ☜85—INJUNCTION—DENIAL OF RELIEF—FAILURE TO DO EQUITY.

That an injunction is asked to protect a copyright does not take the case out of the general principle that an injunction will not be granted to

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

one who has not done equity and does not come into court with clean hands.

[Ed. Note.—For other cases, see Copyrights, Cent. Dig. § 78; Dec. Dig. ⊛85.]

Appeal from the District Court of the United States for the Southern District of New York.

On rehearing. Former order vacated, and order of the District Court affirmed.

For former opinion, see 229 Fed. 42, —— C. C. A. ——.

Max D. Josephson, of New York City, for appellant.

Cohen & Richter, of New York City, for appellees.

Before LACOMBE, WARD, and ROGERS, Circuit Judges,

ROGERS, Circuit Judge. This cause was argued in this court on October 22, 1915, and a decision was rendered in which we directed the District Court for the Southern District of New York to issue an injunction pendente lite to restrain the defendants from infringing plaintiff's copyright in a musical composition entitled "Oh, Those Days." We decided the case as we did because the record contained a judgment entered in the Supreme Court of the state of New York in a suit between the same parties or their privies, and that judgment had dismissed the complaint on the ground that the contract entered into between Romberg and the plaintiffs in that suit was unequitable and lacked mutuality of obligations and remedy. As there can be no contract where there is no mutuality of obligation we considered that judgment as res adjudicata of this controversy. That suit had been brought by the defendants in this suit against Sigmund Romberg, the Shubert Theatrical Company and Jacob J. Shubert, and the plaintiffs in this suit derived their rights through an assignment by Romberg to the Winter-Garden Company of New York which in turn assigned to them.

In December, 1915, an application for a reargument was made. That application was based on the claim that the New York judgment was not in fact as it had been disclosed in the record. We filed a per curiam opinion on January 5, 1916, in which we said:

"Application has been made for a reargument, and with such application there has been filed a copy of the printed case on appeal to the Appellate Division in said cause in the state court. This printed case on appeal apparently indicates that the state Supreme Court amended its judgment, subsequent to original entry, so that its disposition of the issues before it is different from what it was in the original judgment.

"The mere filing of this paper book in no way changes the situation here; the only record before us is the record certified to this court by the United States District Court. We will, however, withhold mandate from issue during this session, so that the counsel, who has moved for reargument, may make application, on notice, on one of our regular motion days, for such relief as he may be advised, to show, if he can, that the state court did not hold the contract sought to be enforced invalid at law, and so operate to deprive his client of the opportunity to obtain a decision on the merits of this cause in the federal courts." 229 Fed. 50, —— C. C. A. ——.

Subsequently there was presented to this court the record of the case in the New York court, and the parties on both sides stipulated in

open court that the judgment roll in the action in the state court was correctly set forth in the printed appeal book entitled "Case on Appeal." It appears now that in the action in the Supreme Court of New York judgment was rendered on December 23, 1914, in which it was "ordered, adjudged and decreed that the complaint herein be and the same hereby is dismissed upon the merits." It appears, also, that on January 19, 1915, the justice who tried the case resettled the judgment making it read as before but striking therefrom the words "upon the merits." It appears, further, that under the New York Code of Civil Procedure a final judgment dismissing the complaint, either before or after trial, does not prevent a new action for the same cause of action unless it expressly declares, or it appears from the judgment roll, that it is rendered upon the merits. Section 1209, New York Code of Civil Procedure. We, therefore, consider that this court is at liberty, as our mandate has not yet been sent down, to take up this appeal for further consideration.

[1, 2] The contract which Romberg made need not be set out in full. The main portion of it was stated in our former opinion. In it Romberg agreed with the present defendants that he would "sell, assign, transfer and set over and vest" in them the right to print, publish and sell all compositions which he might write during a period of five years from the date of the agreement. Romberg expressly agreed in the contract that he transferred to Stern & Co., defendants herein, the sole and exclusive publishing right [copyright] of all the compositions "which he is going to write during the next five years." The contract also stated that "in compensation for this transfer of the copyright Stern & Co. will have to pay to Mr. Romberg a share of profits on each copy of each composition, as follows." Then followed a detailed statement as to the royalties to be paid, which it is not important to set forth herein. For reasons stated in our former opinion, and which we do not now find it necessary to enlarge upon, this agreement constituted a valid and binding contract supported by a valuable consideration. The contract was a valid executory agreement to sell, and the breach of the agreement could be redressed in an action at law for damages. We are not now concerned with whether it could or could not be enforced specifically in a court of equity. It is enough for us at this time to know that the contract is a valid contract and that it imposed a legal and moral obligation upon Romberg which he has seen fit since to repudiate and renounce.

The plaintiffs in this suit who have succeeded to his rights by successive assignments can claim in this court no greater rights than Romberg the assignor could himself assert. If Romberg, having entered into this valid agreement to sell and assign to these defendants the musical production herein involved, and having repudiated his agreement and taken out a copyright in his own name, had then come into a court of equity to obtain an injunction as against these defendants, restraining them from publishing the song, could he have succeeded? If he could not, the plaintiffs in this suit are not entitled to an injunction for they stand in his shoes. As assignees their rights are subject to the equities of these defendants as against Romberg the assignor.

The answer to the question does not depend upon whether the original contract Romberg made with the defendants can or cannot be specifically performed. The plaintiffs are in a court of equity which is a court of conscience, which within the scope of its powers is governed by its own rules. It stays its hand and withholds its aid whenever it is asked to do that which it deems to be against conscience. If it is asked to decree specific performance of a valid written contract for the sale of real estate, it refuses to do so and leaves the parties to their rights at law, if it concludes that the party invoking its aid has wrongfully conducted himself in respect to the contract or if the circumstances show that its enforcement would be harsh and unfair. Thus in Mortlock v. Buller, 10 Vesey, Jr., 292, Lord Eldon, in 1804, said:

"It is much too late to discuss now whether this court ought to order a contract that it would not specifically perform, to be delivered up and to decree the performance of a contract which it would not order to be delivered up; for the distinction is always laid down that there are many cases in which the party has obtained a right to sue upon the contract at law, and under such circumstances that his conscience cannot be affected here, so as to deprive him of that remedy; and yet on the other hand the court, declaring he ought to be at liberty to proceed at law, will not actively interpose to aid him and specifically perform the contract."

And so it has been held that equity will not decree the specific performance of a contract where to do so would necessitate a breach of a prior contract with a third person. Fry on Specific Performance (5th Ed. with Canadian Notes) § 407. And in similar fashion equity will withhold an injunction when it would be against conscience to grant it. This is based upon the principle that he that hath committed iniquity shall not have equity. As the Supreme Court said in Creath's Administrator v. Sims, 5 How. 192, 204, 12 L. Ed. 111 (1847):

"Whosoever would seek admission into a court of equity must come with clean hands; that such a court will never interfere in opposition to conscience or good faith. * * * This prayer, too, is preferred to a court of conscience, to a court which touches nothing that is impure. The condign and appropriate answer to such a prayer from such a tribunal is this: That, however unworthy may have been the conduct of your opponent, you are confessedly in pari delicto; you cannot be admitted here to plead your own demerits; precisely, therefore, in the position in which you have placed yourself, in that position we must leave you."

And see Pope Mfg. Co. v. Gormully, 144 U. S. 224, 236, 12 Sup. Ct. 632, 36 L. Ed. 414 (1891); Haffner v. Dobrinski, 215 U. S. 446, 450, 30 Sup. Ct. 172, 54 L. Ed. 277 (1910); Barnes v. Starr, 64 Conn. 136, 155, 28 Atl. 980 (1894); McCusker v. Spier, 72 Conn. 628, 633, 45 Atl. 1011 (1900); Rudnick v. Murphy, 213 Mass. 470, 471, 100 N. E. 643, Ann. Cas. 1914A, 538 (1913).

In our opinion the plaintiffs do not come into this court with clean hands. Their misconduct relates to the matter now in litigation. Their right is the right of Romberg and the latter's misconduct is for the purposes of this suit theirs. Having agreed by a binding contract to assign this song to these defendants, he has not done as he agreed, but has repudiated the legal and moral obligation which the agreement imposed upon him. In doing so he has committed iniquity as respects

this copyrighted song and the relation of these defendants thereto. And with his hands thus unclean he has no standing in a court of equity in asking an injunction to restrain these defendants from exercising a right which he bound himself to give exclusively to them. As the plaintiffs stand in his shoes we must decline to grant them what we could not grant to Romberg.

[3] There is nothing in the fact that the injunction is asked to protect a copyright which takes the case out of the general principle to which we have referred. In Kerr on Injunction (5th Ed.) 413, the rule is laid down respecting the right to an injunction in copyright cases as follows:

"The interference of the court by injunction being founded on pure equitable principles, a man who comes to the court must be able to show that his own conduct in the transaction has been consistent with equity. A book accordingly which is itself piratical cannot be protected from invasion, nor will the court protect by injunction a work which is of an immoral, indecent, seditious or libelous nature, or which is fraudulent."

The rule thus stated is well established, and the particular instances the author mentions are not intended to be exhaustive, but simply illustrative of the principle applicable in such cases.

In view of the changed judgment entered in the suit brought in the Supreme Court of New York, to which we have herein referred, this court vacates the order it originally made in this suit, and the order of the District Court is affirmed.