*232
 
 Kinkade, J.
 

 This is an action brought by a stockholder against a corporation, to compel the corporation to permit the stockholder to make an examination of the books and papers and take copies thereof. David N. Rosenbaum owns 20 shares of the capital stock of the American Mortgage Company. The day this stock ivas transferred to his name on the books of the company, he demanded the privilege of making an examination of the books and papers of the company and taking copies thereof. The demand was refused, and thereupon this action was commenced.
 

 In his petition, Rosenbaum averred the ownership of the stock, the demand and its refusal, and prayed for a mandatory injunction requiring the corporation to grant him the privilege requested. The company by ansAver admitted that it was a corporation; that Rosenbaum oAvned the stock; that he had made the demand; and that the demand had been refused. The answer contains the further following allegations:
 

 “Defendant says that it is engaged in the sale of its authorized and unissued preferred stock and in the sale of other securities, and that its list of stockholders represents its list of customers for the sale of its stock, and is a trade secret of this defendant and a valuable business asset.
 

 “Defendant says that the plaintiff desires to obtain this list, not in good faith, in accordance with his rights as a stockholder, but solely for the purpose of selling or disclosing said list of stockholders to brokers in the city of Cincinnati, who would use such list in competition with the defendant, whereby the defendant would be irreparably
 
 *233
 
 damaged; further, that the original demand made on the defendant for an examination of its stock ledger, was made on the same day that the stock of which the plaintiff is now the record holder, was transferred to him—said stock having been purchased or transferred to this plaintiff for the sole purpose of enabling him to demand said list of stockholders under color of a statutory right.
 

 “Defendant says that plaintiff does not come into this court with clean hands, but is attempting to enforce a statutory right, given solely for the protection of stockholders, to obtain the trade secret and confidential information concerning the company for improper and illegal purposes.”
 

 A general demurrer was filed by plaintiff to this answer. The demurrer was sustained, and, the defendant not wishing to plead further, judgment was entered in favor of the plaintiff by the trial court. This judgment was affirmed by the Court of Appeals. The mortgage company prosecutes error in this court.
 

 The claim of Rosenbaum is that his motive in seeking to secure the examination and make copies is wholly immaterial, that his right so to do is an absolute one, unconditional in character, and that his motive cannot be inquired into by any court, and he bases this conclusion upon a decision of this court in the case of
 
 Cincinnati Volksblatt Co.
 
 v.
 
 Hoffmeister,
 
 62 Ohio St., 189, 56 N. E., 1033, 48 L. R. A., 732, 78 Am. St. Rep., 707.
 

 The mortgage company claims that a stockholder who is seeking an examination of the books and papers, with the right to take copies thereof, and who is intending to so use the information thus
 
 *234
 
 acquired as to accomplish, an injury to all other stockholders of the company, by doing that which will directly tend to diminish the value of the assets of the corporation, even if it be conceded that the stockholder is exercising a legal right, has no right to have the extraordinary writ of injunction as an aid to him in promoting the contemplated wrong.
 

 Section 8673, General Code, provides that the “books and records of such corporation at all reasonable times shall be open to the inspection of every stockholder.”
 

 Section 8685, General Code, reads as follows:
 

 “Every corporation organized under the laws of Ohio, annually shall make a statement of its financial condition, setting forth its assets and liabilities, and fuynish to each stockholder a true copy thereof, together with a list of its stockholders, and their places of residence.”
 

 It is true that both in the syllabus and in the opinion of the
 
 Volksblatt case, supra,
 
 it is stated that “the right to inspect does not depend upon the motive or purpose of the stockholder in demanding such inspection.” In that case bad faith and improper motive were set up in the answer and denied in the reply, but this issue thus made in the pleadings was eliminated in the trial court by the finding of that court that the allegations in the answer in this respect were not sustained by any evidence. Speaking of this feature of the case, the following appears (62 Ohio St., at page 198, 56 N. E., 1035), in the opinion of this court in that case:
 

 “The finding by the court of all the issues for
 
 *235
 
 the plaintiff settles the questions of fact for this court, but it is not improper to add that there was an entire failure to show, on the part of defendant, that the plaintiff was acting from the improper motives charged in the answer, and that the evidence, all of which we have read and considered, fully justifies the finding in favor of the plaintiff. ’ ’
 

 It will be seen from the foregoing that it was not necessary, in order to decide that case, that there should be a decision on the subject of motive. All that is therein said as to motive is obiter.
 

 The
 
 Volksblatt case, supra,
 
 has been cited in some courts as authority for the proposition that the motive of the stockholder is wholly immaterial in an action of this kind. We think this carries the decision beyond its proper scope, keeping in mind the issue that was before the court in that case.
 

 The demurrer filed in this case admits the truth of the allegations of the answer,
 
 supra.
 
 The mortgage company is in the business of selling securities to persons seeking investments. The defendant in error knew the list of stockholders of the mortgage company could be sold to competitors of the mortgage company. Without doubt it could be readily sold to each of several competitors. Such sales could not result otherwise than to the detriment of all other stockholders by seriously embarrassing the business of the mortgage company.
 

 The extensive plan of advertising that is now being carried on by nearly all commercial and manufacturing institutions is well known. It is
 
 *236
 
 known, too, that a great deal of money is wasted annually in careless advertising, by reason of not being able to get in direct touch with parties who would probably be interested in the commodity offered for sale. Advertising has become a very important business in itself, and many individuals, copartnerships, and corporations are devoting their entire time to that business. The constant effort of these advertising agencies is to get accurate lists and addresses of parties known to be interested in the commodities that are being advertised. Persons who have already made investments in stocks and bonds will probably be interested in other good stocks and bonds, and hence the importance of knowing who these people are and where they are. The advertisers and sellers of stocks, bonds, and other kindred securities do not want to waste money in trying to reach people who are not investors, or whose investments are confined to real estate, or something other than stocks and bonds.
 

 It is entirely manifest that no corporation having a valuable list of investors along a given line, and having securities in that line for sale, would willingly permit the list to be made public, and thereby furnish to all competitors a direct and easy way of reaching the same people. It is a well-known fact that manufacturers of high-grade steel and other metals often have in their possession formulas of very great value. The same is true in respect to the manufacturers of many other ' important articles of commerce and trade. We need not extend the line in detail.
 

 It is not uncommon for manufacturers to have
 
 *237
 
 in their employ, at high salaries, men of skill and inventive genius, who spend a great deal of their time in discovering new processes and inventing new machinery and appliances still better suited for the business than those that are being used. This is particularly true in the electrical field. A great deal of money is constantly being expended along these lines, and inventions and discoveries of the greatest value are to be found in different stages of perfection in many plants; many of them not yet far enough advanced to be protected by patents, but at the same time quite far enough advanced that, if the progress made on them up to date was made public, the publicity would cause irreparable injury to the owner of the invention or discovery. A brief mention of this is sufficient to bring into view the whole field.
 

 If a holder of a single share of stock, who is otherwise a stranger to the business, may force his way in to see the books and papers, including all formulas, plans, and specifications, and take copies thereof, of course he may also inspect all the property, including the inventions and discoveries mentioned, in whatever state of completion he finds them, and may take photographs of them as well. And one inspection will not exhaust his right—he may call again and again. It is said that because he is a stockholder he not only has a clear right to do these things, but that it is the duty of a court of equity, when appealed to, to issue a mandatory injunction to help him acquire this information, quite regardless of the wrongful use which he admits he intends to make of it.
 

 A mere statement of such a proposition we think
 
 *238
 
 at once indicates the answer that must be given to it. The sections of the General Code, supra, require the fullest information to be given to the stockholders of a corporation by the officers and agents of the company with respect to the status of the company’s affairs, and this information includes a list of the stockholders and the amount of stock held by them. But this information is furnished to the stockholder for his proper use in good faith as a stockholder. We do not mean to say that when the information comes to the stockholder, as such, in the regular way, pursuant to the provisions of the statute, as herein quoted, or in other proper manner, the courts will undertake, in all cases, to regulate and restrict what he may do with the information thus in hand. It may be quite impracticable for the courts to safeguard the rights of the company and other stockholders as against the wrongs of some unscrupulous stockholder, bent on promoting his own individual interests, regardless of what the effect might be on the interests of the company or other stockholders.
 

 The principle involved in this case is not new, but, on the contrary, is very old, very simple, and very fully in accord with good sense and common honesty; that is to say, one may possess a legal right, unconditional in character, with respect to the enforcement of which he may avail himself of all legal remedies applicable thereto, and, still, if the results which must attend and follow the enforcement are such as will shock the conscience of a court of equity, that court, if asked to issue its mandatory injunction as an aid to such en
 
 *239
 
 foreement, should, in the exercise of a sound discretion, deny the application and leave the party to pursue his legal remedies. Extraordinary writs are issued by courts of equity to prevent and correct wrongs, but are not employed to promote wrongs.
 

 The issue involved in this case has been litigated in every state in the Union, in both state and federal courts. It is impossible to harmonize these decisions. Many of the early decisions have been later overruled by the same courts. Some are based on statutes; others not. It cannot be said that the weight of authority supports either side of the question. There is abundant authority supporting each side, as will readily appear by an examination of a 75-page annotation in .volume 22, A. L. R., beginning at page 24. Our conclusion from an examination of many authorities is that, when a stockholder admits, or the fact is found by the court on evidence, that he has acquired his stock foi; the purpose of creating a basis for the demand to inspect and copy books and papers, and that he intends to use the information sought, when secured, in such manner as will depreciate the value of the assets of the company and the value of the stock of all other stockholders, he is not entitled to a mandatory injunction requiring the corporation to accede to his demand.
 

 The following authorities sustain the conclusion reached:
 
 Withington
 
 v.
 
 Bradley,
 
 111 Me., 384, 89 A., 201;
 
 Eaton
 
 v.
 
 Manter,
 
 114 Me., 259, 95 A., 948;
 
 Lien
 
 v.
 
 Savings, Loan & Trust Co.,
 
 43 N. D., 260, 174 N. W., 621;
 
 Guthrie
 
 v.
 
 Harkness,
 
 190 U. S., 148, 26 S. Ct., 4, 50 L. Ed., 130, 4 Ann. Gas., 433;
 
 Dun
 
 
 *240
 

 can Townsite Co.
 
 v.
 
 Lane,
 
 245 U. S., 308, 38 S. Ct., 99, 62 L. Ed., 309;
 
 State ex rel. Theile
 
 v.
 
 Cities Service Co.,
 
 1 W. W. Harr, (Del.), 514, 115 A., 773, 776;
 
 Morgan
 
 v.
 
 Howard,
 
 54 App., D. C., 3, 293 F., 650;
 
 Pope Mfg. Co.
 
 v.
 
 Gormully,
 
 144 U. S., 224, 12 S. Ct., 632, 36 L. Ed., 414;
 
 De Weese
 
 v.
 
 Reinhard,
 
 165 U. S., 386, 390, 17 S. Ct., 340, 41 L. Ed., 757;
 
 O’Hara
 
 v.
 
 National Biscuit Co.,
 
 69 N. J. Law, 198, 54 A., 241;
 
 In re Application of De Vengoechea,
 
 86 N. J. Law, 35, 91 A., 314;
 
 Edwards
 
 v.
 
 Allouez Mining Co.,
 
 38 Mich., 46, 31 Am. Rep., 301;
 
 Harms & Francis
 
 v.
 
 Stern,
 
 145 C. C. A., 531, 231 F., 645;
 
 Bassett
 
 v.
 
 Salisbury Mfg. Co.,
 
 47 N. H., 426, 22 A. L. R., 24 to 106.
 

 Judgment reversed, and cause remanded for further procedure in accord with this opinion.
 

 Judgment reversed.
 

 Marshall, C. J., Jones, Matthias, Day, Allen and Robinson, JJ., concur.