No. 12,307.

Dines et al. *v.* Harris.
(291 Pac. 1024)

Decided June 30, 1930. Rehearing denied September 15, 1930.

Messrs. DINES, DINES & HOLME, Mr. ROBERT E. MORE, for plaintiffs in error.

Messrs. LEWIS & GRANT, Mr. F. W. SANBORN, JR., for defendant in error.

*En Banc.*

MR. JUSTICE ADAMS delivered the opinion of the court.

THE parties' names appear here in inverse order from that in the trial court. Harris will be referred to as petitioner and Dines and Fancher as respondents, as in the district court.

Petitioner procured a peremptory writ of mandamus compelling respondents to allow him an inspection, at all reasonable times, of all the books, accounts and papers of the Colorado and Utah Coal Company, hereafter called the company or coal company, and to take copies or make extracts therefrom. Respondents bring the case here on writ of error to review the judgment.

Pleadings, orders and proceedings in the district court sufficient to be stated here consist of: (1) Petition for writ of mandamus; (2) alternative writ; (3) respondents' answer and return thereto; (4) petitioner's combination demurrer and answer to respondents' answer and return; (5) order sustaining above demurrer; (6) respondents elected to stand on this demurrer; (7) oral testimony by petitioner to substantiate the allegations of the alternative writ, and (8) issuance of peremptory writ.

Allegations in the alternative writ admitted by respondents are, that petitioner and respondents reside in Denver; that the company is a Colorado corporation with an authorized capital of 10,000 shares of the par value of $100 per share, 9,990 of which are issued and outstanding; that petitioner is the owner and holder of 1,777.6 of said shares, and that he was one of the directors of the corporation when he brought mandamus; that the company is engaged in the business of mining and marketing coal and is not a railroad or telegraph

company or an industrial corporation having a paid up capital of $20,000,000 and maintaining a stock transfer agency in the city of New York; that respondent Tyson Dines, Jr., is secretary, and respondent A. N. Fancher is vice president and manager of sales of said company. Prior to the commencement of this action, petitioner made a written demand on respondents for inspection and examination of all of the books, accounts and papers of the corporation. Respondents refused, but qualified their refusal, which is more fully explained hereinafter.

Allegations contained in the alternative writ that respondents deny are, that petitioner has a right to examine all of said books, accounts and papers, and that they have in their possession all of them that petitioner desires to inspect.

For convenience only, we here separate the affirmative allegations in respondents' answer and return under two heads, first, that which pertains to a certain prior suit, and second, petitioner's alleged bad faith and improper purpose in making the request for the examination of corporate books, accounts and papers. The prior suit is cause No. 102493 in the district court of the City and County of Denver, and was brought by the coal company against Harris, the present petitioner, and others. A copy of the complaint in said action is attached to and made a part of respondents' return to the alternative writ. Cause No. 102493 was commenced about four months before mandamus was brought and remains pending and undetermined. That complaint alleges in substance, among other things, that the company was promoted by Harris in the year 1914; that he was elected president at the organization meeting and held said office continuously until September, 1927, when the stockholders demanded his resignation; that he was also a director from 1914 to 1928; that in his official capacity he was guilty of gross breach of trust in fraud of the rights of the other officers, stockholders and directors of the company in that while he was so serving, he learned of

the strategic advantage of certain properties adjoining the property of the company; that he took advantage of an engineer's report made for the company, and did not divulge the information to the other officers and stockholders, but that he has acquired or is attempting to acquire such properties to be used in competition with the company and also to gain a wrongful private advantage thereby and from the sale of coal which, through wide advertising and great expense, the company has established with its customers under the trade name of "Harris coal"; that he and his codefendants took property in the name of "dummies" that rightfully belong to the company, all to the great injury, disadvantage and detriment of the company. In that suit, cause No. 102493, the company seeks to recover the properties alleged to have been fraudulently acquired by Harris and his codefendants, and also to restrain and enjoin them from using for their private benefit, or in competition with plaintiff, any information which Harris obtained while president and director of the company.

Under the second division of respondents' return, it shows that petitioner, without request on his part, is furnished each month with a complete detailed income, expense and cost statement covering operations of the company, and with a detailed statement of all assets and liabilities as of the end of the preceding month. Respondents further allege that petitioner, in making his demand for inspection, did not act as a stockholder at all, but only as a competitor and adverse litigant under the guise of a stockholder to conduct a "fishing expedition" into the files of the company and its attorneys, to discover trade secrets and the material used by the company's attorneys in the preparation for trial in the pending suit; that petitioner's purpose was in no way connected with his interests or rights as a stockholder, but is entirely foreign to and antagonistic to his interests as a stockholder; that his purpose is to use any information thus obtained to cripple and injure the coal company

and to promote the interests of himself and other co-defendants as competitors of the company and as defendants and adverse litigants in the pending suit.

Respondents' present position is best told in their own words contained in a letter from their attorneys to petitioner in response to the latter's demand for inspection. This letter is set forth in respondents' return to the alternative writ and reads as follows:

"In response to your demand for inspection of the corporate records of The Colorado and Utah Coal Company, we wish to inform you, that, as a stockholder of said company, acting in good faith as such, you are at perfect liberty at all reasonable times to inspect and examine all the books, accounts and papers of said company.

"It is our opinion, however, that you may not, under the guise of exercising your rights as a stockholder, secure access to records of the company bearing either on the issues involved in the suit now pending between the company and yourself, or on information ordinarily recognized as trade secrets. As a litigant you are not entitled to the one, and as a competitor you are not entitled to the other."

The assignments of error to be considered are, that the court erred in sustaining petitioner's demurrer to respondents' return to the alternative writ, and in entering judgment against them.

1. It has been shown by an undenied affidavit filed in this court after the respondents brought the case here, that the petitioner is no longer a director of the coal company, as he failed of re-election. His right of inspection on the score of his directorship is therefore a moot question, and need not be considered. *Walker v. Walker*, 85 Colo. 473, 276 Pac. 981. We shall determine the matter solely on the basis of petitioner's rights as a stockholder.

2. In general, petitioner's demurrer admits two things: First, the pendency of the former suit brought

by the company against him, and second, that when he made his demand for inspection of corporate books, etc., he was not acting in good faith or for a proper purpose. The position taken by petitioner's counsel is that his motives or good faith cannot be inquired into, and such was the view of the trial court. It is the sole question in this case.

Section 2267, C. L. 1921, reads as follows: ''It shall be the duty of the directors or trustees of every corporation, except railroad and telegraph companies, to cause to be kept at its principal office or place of business in this state, correct books of account of all its business, and any stockholder in such corporation shall have the right, at all reasonable times, to inspect and examine all the books, accounts and papers of the corporation, and shall have the right as aforesaid to demand of any officer, clerk, cashier, or agent of any such corporation having in his control or custody any such books, accounts or papers, as such stockholders may desire to examine or inspect; and upon such demand being made in writing, every such officer, clerk, cashier or agent shall be bound to produce such books, accounts and papers to such stockholders, and afford due opportunity to examine and inspect the same; and such stockholders shall have the right to take copies or make extracts therefrom, but shall not remove from the office of the corporation any such books, accounts and papers  *  *  *.''

The remaining portion of the statute relates to the penalty and damages to be recovered for failure to comply therewith. Section 2268, C. L. 1921 (§870, R. S. 1908, subject to certain amendments by S. L. 1919, p. 354, §8 immaterial here), was construed in *Wire v. Fisher,* 66 Colo. 545, 546, 185 Pac. 469, as the statute then existed before its several amendments. The act is partially set forth in that opinion, sufficient for all purposes here.

A rough distinction between section 2267 and section 2268 before its amendment, in its application to the case at bar is this: Section 2267 gives *stockholders* in certain

classes of corporations the right to examine *all* the books, accounts and papers of the corporation and to take copies or to make extracts therefrom; but section 2268 makes it the duty of certain corporations to keep a *stock ledger* and gives *stockholders* and *creditors* the right to inspect such book or books and to make extracts therefrom.

Section 2268, C. L. 1921, is amended by chapter 81, §22, Laws 1927, pages 275, 276 to read as follows: "It shall be the duty of the directors or trustees of every such corporation, except railroad and telegraph corporations, and industrial corporations having a paid up capital of $20,000,000 and maintaining a stock transfer agency in the city of New York, to cause a book to be kept by the secretary, agent or clerk thereof, containing the names of all persons, alphabetically arranged, who are, or shall within one year have been stockholders of such corporation, and showing their place of residence, the number of shares of stock held by them respectively, and the time when they ceased to be such stockholders, and the amount of stock actually paid in, and what proportion has been paid in cash; which books shall during the usual business hours of the day, be open for inspection of the stockholders and judgment creditors of the company, and their personal representatives, at the office or principal place of business of such company in the State of Colorado * * * and any and every such stockholder, creditor or representative shall have a right to make extracts from such books. Provided, however, the by-laws of any corporation may make reasonable provisions limiting such right of inspection [of the stock ledger] and making extracts, and such right of inspection and making of extracts may be denied any person not making the same in good faith and for a proper purpose, and in any action or application in court seeking mandamus or other writ or order for such inspection or right to make extracts, the court may refuse to order or require that right to make inspection or make extracts be granted unless satisfied that the person demanding

the same is doing so in good faith and has a substantial interest, in his capacity as such judgment creditor or stockholder, in demanding the right  *  *  *.''

The remaining portion of the above act relates to the penalty and damages to be recovered for non-compliance therewith. The present action was brought in the district court in November, 1928, under section 2267, C. L. 1921, and the pleader also took in section 2268, C. L. 1921 as amended, as will appear from his petition, followed by the alternative writ, wherein it is alleged that the coal company is not an industrial corporation having a paid up capital of $20,000,000 and maintaining a stock transfer agency in the city of New York.

3. Counsel for petitioner rely on the following decisions of this court: *Wire v. Fisher, supra,* and *Jameson v. Hanawalt,* 67 Colo. 153, 186 Pac. 717, both decided in the year 1919. The importance of this date is that the above cases were decided before the 1927 amendment to section 2268, C. L. 1921. Petitioner relies also on *Rulon v. Silverman,* 79 Colo. 525, 246 Pac. 788, decided in the year 1926. In *Wire v. Fisher, supra,* Fisher, a stockholder, demanded the right to inspect the *stock ledger* of the corporation. We have re-examined the record in that cause, from which it appears that Fisher had made an arrangement with a third person to enter the brokerage business, and to get a list of the stockholders of the Mutual Co-operative Mining Company as a list of persons ''to whom can be sold other stocks and bonds;'' that Fisher's purpose was that he might use the list ''for his own private business.'' Every case must be read in the light of its own facts. It was not alleged or shown there that Fisher's proposed action was detrimental to the company, or in fraud of the rights of the other stockholders, as in the instant case, and under those facts and the statute then in force, we there held that the stockholder's right to inspect the *stock ledger,* as then given by section 870, R. S. 1908, was an absolute right, and that his motives could not be inquired into. *Wire v. Fisher* is

not a precedent for the instant case because the law under which it was decided has been radically changed by the 1927 amendment. The facts are also readily distinguishable from the case at bar.

4. *Jameson v. Hanawalt, supra,* made a sweeping enlargement of the rule announced in *Wire v. Fisher.* In the Jameson case the record discloses that the answer to the alternative writ showed that Hanawalt, the stockholder, was instigated by bad and malicious motives; that his purpose and design was to inflict injury on the company, and that he threatened to wreck and destroy it. Nevertheless, in view of our decision in *Wire v. Fisher,* the trial court followed it in *Jameson v. Hanawalt,* under another section of the statute—§2267, C. L. 1921— and permitted Hanawalt an inspection of the *books of account and minutes* of corporate meetings. The trial court, regardless of its own views in the Jameson case, followed the Wire opinion. In *Jameson v. Hanawalt, supra,* it is said: ''A stockholder's purpose in examining corporation books is not to be inquired into in an action of this kind. *Wire v. Fisher,* 66 Colo. 545, 185 Pac. 469.'' No reasons were given in the Jameson case on the point here discussed, and no attempt was made to discriminate between the vital differences in the two cases, namely, that in the Wire care, there was no showing that the purpose of the stockholder was to injure the corporation, but in the Jameson case, his purpose was to wreck it. By reason of this difference, the Wire case was not in fact a precedent for *Jameson v. Hanawalt.* The latter case was reversed on other grounds. In the last analysis of *Jameson v. Hanawalt, supra,* it may be said that if it be still the law in this state that a wicked and fraudulent purpose, destructive of the right of other stockholders, is a question that the Legislature can and has put beyond the grasp of the courts, then it may be fairly said that *Jameson v. Hanawalt* is authority for the present peremptory writ in petitioner's favor. But it is not the law. The stautes (§2267 and §2268 as

amended) do not contain a grant of right conferred by
the General Assembly; they are declaratory of the com-
mon law, and our decision here is little else than a re-
habilitation of the common law rule from which there
should have been no departure in the first place, and
from which we now believe the Legislature never in-
tended to depart.

5. We conclude our review of the Colorado cases by
referring to *Rulon v. Silverman, supra,* cited by counsel
for petitioner. It is not an authority in support of either
side of the controversy. No question of improper mo-
tive in seeking the examination of corporate books or
papers was involved; *Wire v. Fisher* and *Jameson v.
Hanawalt, supra,* were not mentioned; the question was
whether the words "*the* books, etc.," meant "*all* the
books, etc." We held that such was the meaning, and
that the writ was good. *Rulon v. Silverman* is not in
point.

6. As we have said, the 1927 amendment, diametri-
cally opposed to our previous rulings, took away their
force as precedents on the question of a stockholder's
good faith or motive. This amendment, quoted above,
declares inter alia that the court may refuse to order
or require that right to make inspection or make ex-
tracts from the stock ledger be granted, unless satisfied
that the person demanding the same is doing so in good
faith and has a substantial interest in his capacity as
such judgment creditor or stockholder, in demanding the
right.

When *Wire v. Fisher* and *Jameson v. Hana-
walt, supra,* were decided, the question was one of first
impression with this court. Authorities in other states
were in hopeless conflict. By virtue of the 1927 amend-
ment, it is again a novel proposition with us, but with
the amendment before us with which to be reckoned. We
might therefore reverse the judgment on one or both of
two grounds, first, that in the light of further reflection,
we believe that we made a mistake in our former ruling

and should candidly say so, or second, that the Legislature has passed a new act, expressly amending section 2268, and amending section 2267 by implication. We shall base our present ruling on both of .these grounds. If we do otherwise and read the 1927 amendment literally, we are confronted with this anomalous situation: If, by virtue of section 2268, the stockholder wishes to examine merely the stock ledger, his motives and good faith may be questioned, but on the other hand, if, under our previous construction of section 2267, he wishes to examine *all of the books, accounts and papers* of the corporation, which of course includes the stock ledger, then it must be that his right is absolute and his motives and good faith cannot be questioned. The two sections must be construed either separately or together, unless they are both wholly discarded. Any possible criticism of interpolation that might apply to construing them together, would also apply to regarding them as independent sections. It is necessary to say either that a stock ledger is not a book, to get it out of section 2267, which we cannot do, or else to say that the proviso in the 1927 act is applicable to both sections, the construction we adopt.

Regardless of the 1927 act, there is abundant authority for the proposition that good faith and proper motives are essential elements, and we believe this to be the better rule. On the basis of statutory construction, we apply elementary rules, such as that sections in pari materia will be construed together, so as to harmonize them if possible. Certainly the evil attendant upon examining all of the books, accounts and papers of the corporation with a baneful purpose, is worse than an examination of merely the stock ledger with such an end in view.

7. Apart from any question of statutory construction, relief sought on the ground of fraud puts in motion the mills of the courts as much as, and perhaps more than, any other subject. Not even the Legislature

can take away from the courts their equitable and constitutional prerogatives to deal summarily with questions of fraud. It would be shocking to suppose that a writ of mandamus, repeatedly declared to be discretionary and not a writ of right, could be nevertheless converted into a weapon of fraud as a matter of right, and that an impotent court should be thus coerced into acting as an instrumentality of palpable wrong. If it could be done with one species of fraud, it could be done as to all. It is unthinkable. Mandamus is a discretionary writ. *People v. Buckland,* 84 Colo. 240, 269 Pac. 15. The old maxim still lives that "He who comes into equity must do so with clean hands," and it is good doctrine for courts of law as well. We disclaim any purpose to attribute a wrong intention to a legislative act, but if forced to construe it as an intended divesture of our constitutional powers, we should be compelled to declare the act invalid to that extent. *Walton v. Walton,* 86 Colo. 1, 21, 278 Pac. 780.

■ ■ 8. A qualification must be here observed. Counsel for respondents make frequent use of the old expression, "a fishing expedition," as a term of reproach to characterize petitoner's attempt at unlimited examination of the books, accounts and papers of the corporation. The term is not necessarily an opprobious epithet, and we think it might prove to be a thoughtlessly chosen simile if not cautiously used. It may depend for one thing on whose estate the "fishing" is being conducted. The stockholders, not the officers or directors, are the real owners. It is ancient law that the books are not the private property of the directors or managers, but are the records of their transactions as trustees for the stockholders. The thread of this thought runs through statutes as well as court decisions. Arbitrary or capricious refusal of the right of inspection cannot be allowed. The statutes should be liberally construed in favor of stockholders and their rights should be zealously guarded (*Bernert v. Multnomah Lumber & Box Co.,* 119 Ore. 44,

247 Pac. 155, 157, 248 Pac. 156), but the Colorado Legislature, as well as the common law, has wisely left these questions to be worked out under the facts of each case. Mere allegations of improper motives or bad faith are not enough and the burden of proof is on respondents.

9. If stockholders would take a keener interest in corporate affairs, beyond the mere preservation of their indicia of ownership, namely their stock certificates and the proper registration thereof, it would undoubtedly be of inestimable benefit to them. Their independent investigations as stockholders should be encouraged, and the writ should go ordinarily almost as a matter of course; in fact it should generally not be necessary to invoke the office of such writ at all. A complete investigation by stockholders or stockholders' committees would naturally lead to either praise or blame of the actions of corporate directors or employees. On the other hand, when petitioner entertains a destructive purpose, hostile to the interests of the corporation as a whole, or the interests of other stockholders, whose rights are as sacred as his own, certainly the writ in his favor ought to be denied. He is then a trespasser, even on ground which otherwise would be his own domain; he has made himself an avowed enemy to be repelled. Courts often deny men access to their own homes for unseemly conduct injurious to other members of the family. No one has a right to misbehave, much less to enforce such claim in court.

According to the alternative writ, there are 9990 shares of the coal company outstanding, with a par value of $999,000, of which petitioner owns less than 18 per cent, or 1777.6 shares, with a par value of $177,760, certainly a substantial interest. It is no answer for him to argue that he would not willingly destroy his own; he could afford to lose it all if by so doing he could manipulate affairs so as to get the property of the company, or injure or destroy a business competitor, the truth of which charge is admitted by his demurrer. It is equally ab-

surd to say that the majority owners of the remaining approximately 82 per cent of stock outstanding, with a par value of $821,240, have no standing in court against petitioner's fraudulent conduct, or that the court can be made an unwilling tool in his efforts to carry out his unlawful scheme. If there were no other way, equity would devise a remedy in favor of the innocent stockholders.

10. In 38 C. J., page 796, §453, it is said that the weight of authority supports the proposition that an illegal or improper motive is a good defense to a demand for inspection. However, in *American Mortgage Co. v Rosenbaum*, 114 O. St. 231, 239, 151 N. E. 122, it is remarked, "It cannot be said that the weight of authority supports either side of the question. There is abundant authority supporting each side, as will readily appear by an examination of a 75-page annotation in volume 22, A. L. R., beginning at page 24." We are not especially concerned now in a poll of foreign authorities, since they are all submerged in this state by legislative enactment and by our construction which we believe to be in harmony with this advanced legislation and consonant with the better rule. Some of the decisions that favor qualifying the right of inspection will be found in *American Mortgage Company v. Rosenbaum, supra; Bernert v. Multnomah Lumber & Box Car Co., supra; State v. Middlesex Banking Co.*, 87 Conn. 483, 88 Atl. 861; *Dintenfass v. Amber Star Films Corp.*, 39 R. I. 555, 99 Atl. 516; *Lien v. Savings, Loan & Trust Co.*, 43 N. D. 260, 174 N. W. 621. Many other cases for and against the proposition are cited in 38 C. J., page 796, §453; note to 22 A. L. R. 24, et seq.; vol. 3, R. C. L., Permanent Supplement (1929 Ed.), pages 1976-1981.

11. In this majority opinion we have endeavored to fully state our reasons and reviewed the question at some length because of its importance. If anything could shake our confidence in our own beliefs, it would be the disagreement of esteemed associates who apparently do

not find themselves able to fully subscribe to an abandonment of our previous ruling, but we have said why it must be done. As remarked in *American Mortgage Co. v. Rosenbaum, supra,* the subject has been litigated in every state in the Union, in both state and federal courts, and even now they do not all agree. The trend, however, is toward a reversion to the common law rule, which makes motive and good faith material in an application for inspection of corporate books, etc. For instance, in *Wire v. Fisher, supra,* one of the authorities relied upon was a Utah case, but since then, in *Goddard v. General Reduction & Chemical Co.,* 57 Utah 180, 193 Pac. 1103, it is said that it is clearly recognized that there may be conditions which would justify the corporation in refusing to permit an inspection, citing many cases. And in *Wire v. Fisher, supra,* a California case was employed, but since the California decision was announced, the legislature of that state has seen fit to modify the rule when the intent is to injure the corporation. Section 377 Cal. Civil Code (Kerr's 1920 Ed.). It is unnecessary to multiply illustrations. The change of front in other states would not necessarily influence us if we did not believe it to be in harmony with the right rule in our own forum.

The judgment is reversed with directions to overrule the demurrer.

MR. JUSTICE BUTLER concurring in part and dissenting in part.

MR. JUSTICE CAMPBELL and MR. JUSTICE BURKE dissent.

MR. JUSTICE BUTLER concurring in part and dissenting in part.

I concur in the reversal of the judgment in part.

1. Sections 2267 and 2268, C. L., have come down to us from early days through several statutory compilations. The former section gives to stockholders of all

38

corporations, "except railroad and telegraph companies," the right to inspect and to copy or make extracts from all corporate books, accounts and papers. The latter gives to stockholders and creditors of all corporations, "except railroad and telegraph corporations, and industrial corporations having a paid up capital of $20,-000,000 and maintaining a stock transfer agency in the city of New York," the right to inspect and make extracts from the book containing a list of stockholders, the number of shares held by each, the transfers, etc., which book, for convenience, will be referred to as the stock ledger. Mandamus is the proceeding resorted to to enforce the right conferred by these provisions. Similar provisions are found in the statutes of other states. Some authorities hold that the right thus conferred is a limited or qualified right; that in a mandamus proceeding the court may, in the exercise of its discretion, refuse the writ where the inspection is sought for improper purposes. Other authorities hold that the statutory right is an absolute right, and that the court cannot inquire into the motives of the applicant; that the writ cannot be denied upon the ground that his motives are improper. "It cannot be said that the weight of authority supports either side of the question. There is abundant authority supporting each side." *American Mortgage Co. v. Rosenbaum,* 114 O. St. 231, 151 N. E. 122. In 1919, in *Wire v. Fisher,* 66 Colo. 545, we chose the latter rule as the better rule, and decided that the right conferred by section 2268, to inspect the stock ledger, is an absolute right, not a qualified or conditional one, and that the right cannot be defeated by showing improper motives. That decision was followed in *Jameson v. Hanawalt,* 67 Colo. 153, 186 Pac. 717, also decided in 1919. In that case the opinion is short, but the record shows that the plaintiff's motives in seeking an inspection of the books and accounts under section 2267 were more reprehensible than those attributed to the plaintiff in the present case.

By two decisions, therefore, we have declared it to be the law in this state that the right to inspect given by a statute in absolute, unqualified terms is an absolute, unqualified right, and that in a mandamus proceeding the courts cannot inquire into the motives or purpose of the applicant, and we have rendered no decision to the contrary.

Since we construed these two sections in *Wire v. Fisher, supra,* and *Jameson v. Hanawalt, supra,* there have been five sessions of the Legislature, and that body has not seen fit to amend section 2267. This would seem to indicate that our construction of that section expressed truly the intent of the Legislature in passing the section. *Maryland Casualty Co. v. Industrial Commission,* 86 Colo. 553, 554, 283 Pac. 548. Furthermore, in 1927 the Legislature, for reasons satisfactory to it, amended section 2268, so as to permit the court, in its discretion, to refuse to order an inspection of the stock ledger unless satisfied that the stockholder or the judgment creditor demands the inspection "in good faith and has a substantial interest, in his capacity as such judgment creditor or stockholder, in demanding the right." The fact that the Legislature differentiated between the two sections by amending section 2268, and leaving section 2267 as it was, is another indication of the legislative intent that section 2267, as construed by this court, should continue to be the law in this state with reference to the inspection of all books, accounts and papers, except only the stock ledger. It is our duty to harmonize the two sections, if possible, so that each may be given effect. *People ex. rel. v. Board of County Commissioners of Chaffee County,* 86 Colo. 249. Construing the two sections together, they mean this: Where stockholders or judgment creditors of corporations, with the exceptions stated in section 2268, seek a writ of mandamus to compel the corporate officers to permit them to inspect the stock ledger, the court may, in its discretion, refuse the writ in the circumstances stated in that section, as

amended in 1927. But where stockholders of corporations, with the exceptions stated in section 2267, seek to mandamus the officers of corporations to permit them to inspect any or all of the books, accounts and papers, the court cannot deny the writ, as to any but the stock ledger, on account of the improper motives of the applicants. The inspection of the stock ledger is excepted because such inspection is specially provided for by another section, namely, section 2268, as amended in 1927.

The judgment, so far as it orders an inspection of all books, etc., except the stock ledger, is right, and should be affirmed.

2. In view of the Legislature's attitude, indicating an approval of our construction of section 2267, I cannot concur in the overruling of *Jameson v. Hanawalt, supra,* construing that section, or in the overruling of *Wire v. Fisher, supra,* announcing the principle applied in the Jameson-Hanawalt case. If time has shown the rule there announced to be unwise, it would be better to leave to the Legislature, at its approaching session, the question of changing the law. As stated in the majority opinion, that is the course pursued in California, and I believe it to be the better course. Amendment by the Legislature would act prospectively, whereas amendment by this court would act retrospectively, and would charge the trial court with error in having followed the decisions of this court. There are occasions where it is proper to overrule previous decisions, but this does not impress me as being such an occasion. The present case does not seem to me to be one in which there is an urgent call for retrospective amendment of the law. In another suit Harris is charged with the violation of trust as a director. It is said that in the present case he seeks an inspection for the purpose of discovering trade secrets and the material used in the preparation of the company's suit against him, in order to cripple the company in that suit and to promote the interests of himself and his codefendants as competitors of the company. Harris

was a director of the company, and had been a director for many years. He was not a "dummy" director, but was the owner of nearly one-fifth of the outstanding capital stock. The directors are the managers of the affairs of the corporation. C. L., section 2243 (8). The corporate powers are vested in the board of directors. C. L., section 2263. It is not only the privilege of directors, but it is their duty, to know about the corporate business—all of the business, including so-called "trade secrets." Surely the business of the corporation, however secret as to outsiders, was not concealed from a director. If it was, by what authority was it done? It is not easy to understand the claim that, among the books, accounts and papers there appear any business matters that, as to director Harris, were secrets. Nor is it clear how the company could be *improperly* prejudiced by an inspection of the corporate records for the purpose of discovering evidence for use in the suit brought against Harris. If there is nothing in those records that would disprove the charges made against Harris, the company would suffer no harm; but if the records contain anything that would disprove those serious charges, it certainly would not further the interests of justice to judicially sanction the concealment of such defensive matter.

3. For the following reason the judgment, so far as it ordered an inspection of the stock ledger, should be reversed. The plaintiff sought the inspection of *all* the books, accounts and papers. The trial court held that under the statute, as construed by us in *Wire v. Fisher, supra,* and *Jameson v. Hanawalt, supra,* the court is not permitted to exercise any discretion in the matter; that it cannot inquire into the motives of the plaintiff in seeking an inspection, and for that reason the court ordered the issuance of a peremptory writ of mandamus, commanding the defendants to permit the plaintiff to inspect, and to make copies of or extracts from *all* the books, accounts and papers of the corporation, which, of course,

includes the stock ledger. Indeed, there are averments indicating that the plaintiff relies, so far as his right to inspect the stock ledger is concerned, upon section 2268, C. L. As we have seen, by virtue of the amendment of 1927, the court has discretion to refuse, in the circumstances stated in amended section 2268, to order an inspection of the stock ledger. What the order of the court would have been with reference to an inspection of the stock ledger if the court had felt at liberty to exercise, and had exercised, its discretion in the matter, does not appear. Upon remand of the case, the trial court should consider all the facts and circumstances, and unless satisfied that, in demanding an inspection of the stock ledger, the plaintiff is acting in good faith and has a substantial interest, in his capacity as stockholder, in demanding the right, the court may refuse to order an inspection of the stock ledger.

For the reason herein stated, and for that reason only, I concur in the reversal of the judgment, so far as it orders an inspection of the stock ledger.

Mr. Justice Campbell and Mr. Justice Burke authorize me to say that they concur in this opinion, with the following qualification: They construe section 2268 to mean that the court is given discretion to deny the right to inspect only when a by-law of the corporation limits the right of inspection. As the Colorado and Utah Company has no such by-law, they conclude that the court has no right to refuse an inspection because of any improper motive on the part of the plaintiff. In their opinion, therefore, the judgment should be affirmed in its entirety.