**GROSSMAN, Plaintiff, v. CLEVELAND CARTAGE COMPANY, Defendant.**

Common Pleas Court, Cuyahoga County.

No. 701264. Decided February 24, 1959.

McAfee, Hanning, Newcomer & Hazlett, Cleveland, Ralph A. Colbert, Arthur G. Taylor, of Counsel, for plaintiff.

Baker, Hostetler & Patterson, Cleveland, Charles D. Johnson, of Counsel, for defendant.

**OPINION**

By JOHN V. CORRIGAN, J.:

In this matter seeking a mandatory injunction, the agent of a minority stockholder made written demand on the officers of the corporation to examine the corporate records in order to "secure information as to the details of the company's business, the status of its affairs and to investigate whether there are any improprieties in the management and operation of the company." The company refused the agent access to the books alleging that the request did not comply with the requirements of §1701.37 R. C., in that the demand did not state the required "specific purpose."

The plaintiff, prior to his death (his executor having revived this action which was pending at the time of his death), was the holder and owner of 1,550 shares of common capital stock of the defendant, The Cleveland Cartage Company, an Ohio corporation. In April 1957, plaintiff appointed L. H. Blake as his attorney-in-fact to represent him in regard to said shares. (The executor of the estate likewise has authorized said L. H. Blake to act under a power of attorney.) The agent wrote the Company in May, 1957, seeking information relating to the financial condition of the Company, the reasons for its losses, expense accounts of the president and members of his family, accounts receivable and payable, and other matters. The Company admits receipt of this letter.

Under date of August 19, 1957, said agent forwarded a formal written demand, in compliance with §1701.37, Sub-section (C), R. C., requesting the right "to examine the articles of incorporation, its regulations. its books and records of account, minutes, and record of shareholders aforesaid, and voting trust agreements, if any, on file with the corporation, and to make copies or abstracts thereof. This demand and the examination will include all of the Subsidiaries of The Cleveland Cartage Company."

The time, date and place of the proposed inspection was fixed, and the letter was concluded with the following paragraph:

"The purpose of this inspection is to secure information as to the details of the company's business, the status of its affairs and to investigate whether there are any improprieties in the management and operation of the company."

The Company admits that the request was denied in its answer to Plaintiff's petition, "but states that the denial of such demand was

for the reason that plaintiff's said attorneys failed to state any specific purpose therefor and that their actual purpose in making such demand, * * * was not in fact a reasonable and proper purpose."

The hearing was very brief, consisting of a number of stipulations by and between counsel, the direct and cross-examination of the substituted party plaintiff, James S. Grossman, and the short final oral arguments of counsel. No testimony was offered relative to the status of a number of subsidiary corporations and unincorporated firms, the control, if any, exercised over them by the parent corporation, the membership of the various boards of directors, and the nature and type of the business of each aside from the stipulation that all are engaged in the general trucking business. Further no testimony was offered in connection with the allegation in the answer that the purpose for the inspection by the plaintiff was not a reasonable and proper one.

Counsel for the parties in well-written and succinct briefs are agreed that the sole issue is whether the written demand made by the plaintiff to examine the books and records of the Company complies with the requirements of §1701.37(C) R. C., as amended on October 11, 1955. Prior to this date, the right of a shareholder to inspect corporate records was covered by §1701.72 R. C., which stated:

"Every corporation shall maintain adequate and correct accounts of its business transactions, including accounts of its assets, liabilities, receipts, disbursements, gains, losses, stated capital, and shares, together with such particular accounts as are required by §§1701.01 to 1702.43 inclusive, R. C.

"The books of account, lists of shareholders and their addresses, records of the issuance and transfer of shares, voting trust agreements, if any are filed, and minutes of meetings of every corporation shall be open to the inspection of every shareholder at all reasonable times except for unreasonable or improper purposes."

The right of a shareholder to inspect corporate books and records is now covered by §1701.37(C) R. C., which reads:

"Any shareholder of the corporation, upon written demand stating the specific purpose thereof, shall have the right to examine in person or by agent or attorney at any reasonable time and for any reasonable and proper purpose, the articles of the corporation, its regulations, its books and records of account, minutes, and records of shareholders aforesaid and voting trust agreements, if any, on file with the corporation, and to make copies or extracts thereof."

Under the former statute, the shareholder was not required to state any purpose whatsoever in connection with his demand for inspection. He was required to exercise his right "at reasonable times save and except for unreasonable or improper purposes." The new statute, in effect at the time the shareholder's demand was made, places two limitations on the right of inspection which were not contained in the former statute nor in the cases decided under it. The statute now requires the shareholder to make a written demand to examine books and records and to state the specific purpose for the inspection.

No useful purpose is served by detailing here the stockholder's right of inspection. It is an accredited incident of membership in a corpora-

tion long recognized by the common law. It must be pointed out, however, that the right of inspection has been qualified and limited to the extent that the inspection may not be conducted in a manner detrimental to the operation of the corporation and the rights of the other shareholders. **American Mortgage Co. v. Rosenbaum, 114 Oh St 231,** 151 N. E., 122.

As is said by Judge Bijur in Farmers Loan and Trust Co. v. Pierson, 130 Misc., 110, 222 N. Y. Supp., 532.

"Stockholders are entitled to know all about the affairs of their corporation. There are, of course, utilitarian considerations and pragmatic reasons why the directors of a corporation cannot devote their entire lives to an uninterrupted narration to separate stockholders of the minuate details of the affairs of the corporation. Practical difficulties involved in such situations are readily solved by the courts (if necessary) through the application of ordinary common sense. But the right of the stockholders to know about their own business—for they are the real owners can hardly be questioned."

Briefly stated, the stockholder is given a right to inspect the books and records of the corporation at a reasonable time and place and for a proper purpose so long as he does so in good faith and in furtherance of an object germane to the protection of the stockholder's interests in the corporation. Sawyers v. The American Phenolic Corp., 89 N. E. (2d), 374 (Ill. S. C. 1949); **Cincinnati Volksblatt Co. v. Hoffmeister, 62 Oh St 189, 56 N. E., 1033; William Coale Development Co. v. Kennedy, 121 Oh St 582, 170 N. E. 434; Mayer v. Cincinnati Economy Drug Co., 89 Oh Ap 512.**

There is no doubt that under the common law rule the reasons given for the inspection here are not only proper but are the very reasons which make the right of inspection necessary. Without this right, stockholders would be defenseless at the hands of a dishonest manager, in that they would have no means of discovering nefariousness, subterfuge or incompetency. The detection of latent improprieties in management is therefore the chief purpose for such investigations. In Nodana Petroleum Corp. v. State, 123 A. (2d), 243, 245, 246 (Del. S. C. 1956), the stockholder wrote "I . . . have become concerned that improper transactions might have occurred of which I have no knowledge . . ." The court held "the plaintiff did sufficiently state the purpose of his inspection."

While much verbiage can be found expounding the meaning of proper purpose, little or no reference is made to the concept "specific purpose." In a recent case, however, the court inferentially found that a demand the object of which was to "ascertain the remuneration and other benefits received by the officers" was a specific purpose. The Court found this purpose to satisfy the following rule "The common law right of inspection should be granted where the request is made in good faith, for a specific purpose, and where it is not made for a vexatious purpose or to gratify curiosity; * * *." Saunders v. Pacific Gamble Robinson Co., 84 N. W. (2d), 919 (Minn. S. C. 1957). The one case imparting "specific" into the common law rule seems to indicate that the instant purpose is sufficiently specific, however, it is apparent that the word "specific" is

unique to the common law concept of the right of inspection and requires judicial construction.

Generally, courts tend to reprove and limit any statutory modification of the common law right of ·investigation in order to preserve this essential right. For example, in State v. Crookston Trust Co., 22 N. W. (2d). 911, 917 (Minn. S. C. 1946), the court stated "where there is no provision for repeal of the common law rule or a statutory declaration that the statutory rule shall be exclusive, common law rules remain in effect." In Lehman v. Nat'l Benefit Ins. Co., 53 N. W. (2d), 872, 876 (Iowa S. C. 1952), the court indicated that statutory restatements of the common law rule are really salutary and do not abridge. it. The antipathy harbored by the courts toward any modification is exemplified by the statements in Crouse v. Rogers Park Apartments, 99 N. E. (2d), 404 (Ill. App. Ct. 1951), "It is not to be circumscribed by such a meticulous and technical construction as to make it only a snare and a delusion." In the light of previous judicial construction of other statutory modifications of the common law rule. "specific" must be liberally construed in the manner that best protects the interest of the stockholder seeking the investigation.

Therefore, construing the term "specific purpose" in the light of the common law right of investigation and its reason for existence, it is apparent that the purpose stated by the stockholder's agent is sufficiently specific to make the corporation's refusal to permit access to the books an unwarranted deprivation of an essential right. Reading of the committee comments appended to the revision of the statute reveals the intent of the committee to do no more than restrict the examination to such records as are· relevant to the stated purpose, and to deny an examination by a shareholder who refuses to state his purpose or who states an unreasonable purpose. In the words of the committee, "Division (C). however does not go beyond this, as the shareholder who furnishes the proper written statement will be presumed to be acting in good faith * * *."

The reason the Legislature enacted §1701.37(C) R. C., is quite obvious. It is important in the conduct of its business that a corporation should have some control over the stockholder's power of examination and inspection. Otherwise the proper conduct of its business might be seriously embarrassed by quarrelsome and unreasonable stockholders with reckless abandon seeking to exercise the right of examination. We do not think that the Legislature in enacting this new Section requiring "a written demand stating the specific purpose" intended to take away that right entirely by immersing it in a sea of technicality. Nor was it intended that the corporation be placed in the very advantageous position of admitting to the stockholder that his written demand states a purpose, admittedly a proper purpose, but not specific enough to satisfy the directors. Conceivably every written demand could result in a court action to determine if the proper purpose, reasonably related to the interests of the shareholder, necessarily fulfilled the corporation's arbitrary requirements. Could the corporation require such definiteness and particularity that would completely nullify the right, or, at least, further burden our already overcrowded dockets?

It must be remembered that the shareholder is exercising his "right to know" about the inner workings of the company of which he is a part owner. If he knew specifically the details involved there would be little need for the examination, presuming he was acting in good faith. Counsel for the Company used the expression, frequently used in these cases, "a fishing expedition" as a term of reproach to characterize plaintiff's attempt at unlimited examination of the books, accounts, and papers of the corporation. In Dines v. Harris, 88 Colo., 22, 291 Pac., 1024, Judge Adams writes:

"The term is not necessarily an opprobious epithet and we think it might prove to be a thoughtlessly chosen simile if not cautiously used. It may depend for one thing on whose estate the 'fishing' is being conducted. The stockholders, not the officers or directors, are the real owners. It is ancient law that the books are not the private property of the directors or managers, but are the records of their transactions as trustees for the stockholders. Arbitrary or capricious refusal of the right of inspection cannot be allowed. The statutes should be liberally construed in favor of stockholders, and their rights should be zealously guarded, but the Colorado Legislature, as well as the common law, has wisely left these questions to be worked out under the facts of each case."

Necessarily, every case involving the right to examine corporation books must be determined on its own facts. In a conference before trial defendant's counsel made allegations about the propriety of the examination itself and about plaintiff's agent being a disgruntled former employee of the Company bent upon causing mischief. No testimony was offered along these lines during the trial, so the Court concludes that the purpose as stated is a proper purpose and that incident to the right of examination is the right to have such inspection made by the chosen agent of the stockholder.

As heretofore stated, the sole issue presented by this case is whether the demand for inspection of records complies with the present requirements of the Ohio General Corporation Act as to the "specific purpose." In his brief, defendant's counsel advances the argument that the business of the Company and its subsidiaries is so extensive that it cannot have all of its books and records tied up for examination because of the interference with continued daily operation. However, the statute requires a statement of the specific purpose for the examination, not an enumeration of specific books and records, nor a detailed outline of the contemplated steps of the investigation.

We are of the opinion that the plaintiff's stated purpose in the letter of August 19, 1957, is sufficiently specific to entitle him to an investigation of the corporate books and records of the Company.

It is therefore ordered and adjudged that the defendant Company permit this substituted plaintiff, through his designated agent, to inspect the books and records of the Company.