[Cite as *No-Burn, Inc. v. Murati*, 2011-Ohio-5635.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

NO-BURN, INC.

       Appellant/Cross-Appellee

       v.

PEDRO MURATI

       Appellee/Cross-Appellant

C.A. No.     25495

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CV 2008 08 5602

DECISION AND JOURNAL ENTRY

Dated: November 2, 2011

CARR, Presiding Judge.

{¶1} Appellant/cross-appellee, No-Burn, Inc. ("NBI"), appeals the judgment of the Summit County Court of Common Pleas. Appellee/cross-appellant, Dr. Pedro Murati also appeals from the same judgment. This Court affirms.

I.

{¶2} NBI is an Ohio corporation with its principal place of business in Wadsworth, Ohio. Dr. Murati is a resident of Kansas and a shareholder in NBI since May 2007, having invested $600,000.00 in the company. He invested another $200,000.00 on behalf of his brother and sister-in-law. After becoming a shareholder, Dr. Murati demanded the right to examine, copy, or make extracts from eighteen sundry categories of corporate documents and records. On August 8, 2008, NBI filed a complaint for declaratory judgment "setting forth the rights and responsibilities of [the parties] as to documents and information which should be produced in

response to [Dr. Murati's] demand for information ***." Attached to the complaint is Dr. Murati's written demand delineating eighteen categories of requested documents.

{¶3} Upon Dr. Murati's request, the case was removed to the federal district court, which subsequently remanded the case to the state court based on a lack of federal subject matter jurisdiction.

{¶4} Dr. Murati filed an answer and counterclaim for injunctive relief, requesting an order requiring NBI to allow him to inspect the company's books and records pursuant to R.C. 1701.37(C). Dr. Murati also prayed for an award of costs and expenses, including reasonable attorney fees, although he neither cited any statutory authority for such an award nor alleged any bad faith by NBI. In conjunction with his complaint, Dr. Murati filed a motion for a mandatory injunction requiring NBI to allow inspection of corporate records. NBI filed a memorandum in opposition, and Dr. Murati replied. NBI also filed an answer to Dr. Murati's counterclaim.

{¶5} The case was tried to the bench on December 19, 2008. The trial court clarified that it was proceeding to trial on the merits of the case rising out of the complaint and counterclaim, rather than to hearing on the pending motion. On December 31, 2008, the trial court issued its judgment, dismissing NBI's complaint for declaratory judgment and awarding partial judgment in favor of Dr. Murati on his counterclaim. NBI filed a notice of appeal and Dr. Murati attempted to cross-appeal. This Court dismissed the appeal and cross-appeal for lack of jurisdiction because the trial court's December 31, 2008 judgment failed to contain a full statement of the relief being afforded to the parties. *No-Burn, Inc. v. Murati*, 9th Dist. No. 24577, 2009-Ohio-6951.

{¶6} On February 8, 2010, NBI filed a motion in the trial court to amend its judgment in order to fully declare the rights and responsibilities of the parties. Dr. Murati opposed the

motion to amend. On June 15, 2010, the trial court issued a protective order, as well as a judgment declaring the rights and responsibilities of the parties. The trial court expressly adopted and incorporated its December 31, 2008 judgment as its findings of fact and conclusions of law. The trial court entered judgment in favor of Dr. Murati on his counterclaim and issued an injunction requiring NBI to produce documents as described in Dr. Murati's request numbers 1-13 and 15-17. Dr. Murati had withdrawn his request number 18 and the trial court found that NBI had no documents which would satisfy request number 14. The trial court denied Dr. Murati's prayer for attorney fees and expenses. NBI filed a timely appeal and Dr. Murati filed a timely cross-appeal.

## II.

### NBI'S ASSIGNMENT OF ERROR I

"THE TRIAL COURT ERRED AS A MATTER OF LAW IN GRANTING A MANDATORY INJUNCTION AND A DECLARATORY JUDGMENT IN FAVOR OF APPELLEE PEDRO MURATI THAT EXCEED THE MANDATE OF R.C. 1701.37(C)."

{¶7}    NBI argues that the trial court erred by granting an injunction and declaring that NBI was required to allow Dr. Murati to inspect sixteen categories of corporate documents because those categories of documents exceed the mandate of R.C. 1701.37(C). This Court declines to address the argument because NBI forfeited the issue.

{¶8}    NBI argues that Dr. Murati's sixteen categories of requested information do not fall within the scope of the statutory phrase "books and records of account" as used in R.C. 1701.37(C). However, the corporation failed to raise that issue at any time prior to trial. Instead, the complaint asked generally for a declaration of NBI's rights and obligations pursuant to Dr. Murati's statutory request to inspect. At trial, NBI presented no evidence and made no argument that the sixteen categories of information did not constitute "books and records of account."

Only after dismissal of the first appeal did NBI address with specificity the meaning of the phrase "books and records of account" as it believed the legislature intended. Because the court had already held a trial on the complaint and counterclaim, however, Dr. Murati had no opportunity to respond and present evidence regarding how his requests comported with the statutory meaning of that phrase.

{¶9} Based on the above-noted procedural history, the trial court concluded that NBI had not properly raised the issue of the meaning of the phrase "books and records of account" and refused to amend the original judgment which noted NBI's failure to raise the issue. Because NBI did not properly raise the issue before the trial court prior to trial, NBI forfeited the issue on appeal and this Court declines to address it. Accordingly, NBI's first assignment of error is overruled.

## NBI'S ASSIGNMENT OF ERROR II

"THE TRIAL COURT ABUSED ITS DISCRETION BY GRANTING A MANDATORY INJUNCTION AND A DECLARATORY JUDGMENT THAT ARE ENTIRELY OVERLY BROAD AND UNDULY BURDENSOME."

{¶10} NBI argues that the trial court abused its discretion by declaring rights and obligations and issuing a mandatory injunction which are over broad and unduly burdensome. This Court disagrees.

{¶11} The Ohio Supreme Court has held that "'[t]he granting or denying of declaratory relief is a matter for judicial discretion[.]'" *Mid-American Fire & Cas. Co. v. Heasley*, 113 Ohio St.3d 133, 2007-Ohio-1248, at ¶12, quoting *Bilyeu v. Motorists Mut. Ins. Co.* (1973), 36 Ohio St.2d 35, syllabus. Moreover, the decision to grant a mandatory injunction rests largely within the trial court's discretion. *Old Mill Village Homeowners Assn. v. Bacik* (Feb. 3, 1993), 9th Dist. No. 2118. An abuse of discretion is more than an error of judgment; it means that the trial court

was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219. An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. Id.

{¶12} Dr. Murati, pursuant to R.C. 1701.37(C), issued a written demand by a shareholder to NBI to inspect eighteen categories of corporate records. He later withdrew one category and the trial court refused to allow inspection of one category.

{¶13} R.C. 1701.37(C) states, in relevant part:

"Any shareholder of the corporation, upon written demand stating the specific purpose thereof, shall have the right to examine in person or by agent or attorney at any reasonable time and for any reasonable and proper purpose, the articles of the corporation, its regulations, its books and records of account, minutes, and records of shareholders aforesaid, and voting trust agreements, if any, on file with the corporation, and to make copies or extracts thereof."

{¶14} NBI appended a copy of Dr. Murati's demand letter to its complaint. The demand letter states, in relevant part:

"The undersigned is a shareholder of record in [NBI]. Pursuant to the provisions of [R.C.] 1701.37(C), I hereby demand that you allow me to examine, copy, or make extracts from the following books and records of account of [NBI], covering the period from January 1, 2005 to the present.

"1. General ledger, all subsidiary ledgers and journals, including payroll ledger, and all books of original entry;

"2. Bank statements, with reconciliations;

"3. Copies of any contracts to which [NBI] is a party, including employment contracts and consulting contracts;

"4. Financial statements and reports, and memoranda and/or reports to management concerning internal procedures and/or financial conditions prepared by [NBI's] accountants and/or anyone else on behalf of [NBI];

"5. Contracts and other documents pertaining to transactions to which [NBI] is a party;

"6. Copies of any leases and/or agreements to lease to which [NBI] is a party;

"7. Records pertaining to any securities or other investments held by or on behalf of [NBI];

"8. Copies of any guarantees by [NBI] of the obligation of others;

"9. Records, expense reports and other documents pertaining to expense reimbursements and advances and all supporting documents related thereto, including without limitation documents pertaining to the payment of sales commissions, incurrence or payment of research and development expenses, communications and information technology expenses, legal, accounting and other professional expenses, and expenses related to the purchase or servicing of insurance policies;

"10. Records and other documents pertaining to salaries or other personnel expenses for employees or independent contractors, including without limitation payroll records;

"11. Records and other documents pertaining to all inter-company transfers, transactions, loans and advances, including without limitation transactions between [NBI], No-Burn North America, Inc. and No-Burn Investments, LLC, or between any subsidiaries of these entities;

"12. Records and other documents pertaining to any and all expenses paid by [NBI] on behalf of or for the benefit of any owner, officer, employee, or related entity;

"13. Copies of any and all bank loan applications and all supporting documents related thereto;

"***

"15. Records and other documents pertaining to travel and/or travel expenses of any owner, officer, or employee for which reimbursement was requested;

"16. Records and other documents related to any and all items, goods and/or services purchased by any owner, officer, or employee for which reimbursement was requested;

"17. Copies of all cellular phone service statements for which reimbursement was requested and all correspondence with cellular phone service providers related thereto[.]

"***

"Such inspection is to take place during normal business hours and shall continue for such time as is reasonably necessary to complete the inspection.

"This demand for inspection is sought for the proper purpose of ascertaining [NBI's] general condition and state of affairs so that I can exercise my rights as a shareholder and ascertain the status of my investment intelligently and on an informed basis."

{¶15} The issues presented in NBI's challenge are whether inspection of all these categories of information is necessary to satisfy Dr. Murati's enunciated purpose, particularly in light of his routine receipt of quarterly and annual financial statements; and whether the production of all requested information is unduly burdensome so that it was error to order such.

Information necessary to satisfy Dr. Murati's purpose

{¶16} NBI argues that the trial court abused its discretion by ordering the corporation to allow Dr. Murati to inspect books and records of the types delineated in all sixteen categories requested because such information was outside the scope of Dr. Murati's stated purpose. This Court disagrees.

{¶17} A corporation must allow inspection "for any reasonable and proper purpose." R.C. 1701.37(C). The Ohio Supreme Court wrote that, in order for a shareholder to exercise his right of inspection, "[n]othing more is required than that, acting in good faith for the protection of the interests of the corporation *and his own interests*, he desires to ascertain the condition of the corporation's business." (Emphasis in original.) *Lake v. Buckeye Steel Castings Co.* (1965), 2 Ohio St.2d 101, 104. The committee note to the statute states that there is a presumption that a shareholder's written statement of purpose has been made in good faith and the corporation has the burden of rebutting the presumption by proving that the shareholder's actual purpose is improper or unreasonable. Only where the shareholder's stated purpose is unreasonable or

improper on its face may the corporation justifiably refuse the request to inspect. *Lake*, 2 Ohio St.2d at 105-106.

{¶18} Dr. Murati made his request for the stated purpose of "ascertaining [NBI's] general condition and state of affairs so that I can exercise my rights as a shareholder and ascertain the status of my investment intelligently and on an informed basis." NBI does not dispute that this is a reasonable and proper purpose. Dr. Murati's purpose serves to protect his own interests as an investor. See *Lake*, 2 Ohio St.2d at 104; see, also, *Grossman v. Cleveland Cartage Co.* (1959), 83 Ohio Law Abs. 101, 157 N.E.2d 154, 157 ("The detection of latent improprieties in management is therefore the chief purpose for such investigations.").

{¶19} Dr. Murati testified at trial that he maintains the purpose enunciated in his written demand as his sole purpose for inspection. He testified that his biggest concern is that the financial statements provided quarterly and annually by NBI are mere compilations by corporation management that mean nothing because they have never been audited or reviewed by independent and uninterested entities or persons. Dr. Murati testified that he was alarmed by a letter from NBI's accountant appended to financial statements provided at the March 2008 shareholder's meeting in which the accountant asserted that he could not vouch for the accuracy of the information because it consisted of a mere compilation from management which did not meet the minimum standards for accounting principles. Dr. Murati read from the accountant's letter in part: "The effects of this departure from generally accepted accounting principles on the financial position, results of operations, and cash flows have not been determined." He further testified that, based on the financial statements he has seen, he suspects "hanky-panky" in the management of corporate affairs.

{¶20} NBI argues that the information Dr. Murati requested "goes way beyond ascertaining [the corporation's] 'general condition,' and instead seeks unfettered access to nearly all of [NBI's] documents." This Court disagrees. Each category of information relates precisely to Dr. Murati's understanding of the overall condition of the company in which he has invested a significant sum of money. General and payroll ledgers, bank statements, financial statements and supporting memoranda from accountants, corporate investments, general expense reports, personnel expense records, owner/officer/related entity expense records, travel expense records, and owner/officer/employee reimbursement reports all provide a picture of the general financial condition of the corporation, specifically, sources and amounts of money coming into the corporation and how it is being dispersed. Contracts (employment, consulting, transactional, leases, guarantees, loans) and offers to contract (loan applications) provide a picture of management's utilization of corporate resources and willingness to assume risks. Such information is highly relevant to the ascertaining of a corporation's general condition and state of affairs.

{¶21} NBI further argues that it provided information to Dr. Murati in response to twenty-four other questions designed to elicit substantially similar information. William Kish, president and chief executive officer of NBI, testified that the corporation's attorney answered twenty-four "very, very detailed questions" regarding line items in financial statements, but that Dr. Murati was not satisfied and subsequently made his written demand including the sixteen categories of information set forth above.

{¶22} The initial twenty-four "detailed questions" which NBI answered were admitted into evidence as NBI's "Exhibit 3," however, the record contains no exhibits. All exhibits for this case were requested from the Summit County Clerk of Court pursuant to the established

exhibit request protocol. This Court was informed in an email from the clerk's director of administration/evidence that "[t]here are no exhibits on this case[.]" This Court has repeatedly held that "[i]t is the duty of the appellant to ensure that the record on appeal is complete." *State v. Daniels*, 9th Dist. No. 08CA009488, 2009-Ohio-1712, at ¶22, quoting *Lunato v. Stevens Painton Corp.*, 9th Dist. No. 08CA009318, 2008-Ohio-3206, at ¶11. "Where the record is incomplete because of appellant's failure to meet his burden of providing the necessary record, this Court must presume regularity of the proceedings and affirm the decision of the trial court." *State v. Jones*, 9th Dist. No. 22701, 2006-Ohio-2278, at ¶39, citing *State v. Vonnjordsson* (July 5, 2001), 9th Dist. No. 20368. To the extent that the twenty-four "very, very detailed questions" and their responses are necessary to this Court's determination of whether NBI had previously satisfied Dr. Murati's stated purpose for inspection of additional information, this Court must presume regularity in the trial court's proceedings and affirm the judgment of the trial court. See *Jones* at ¶39.

{¶23} There are several documents appended to Dr. Murati's motion for a mandatory injunction. One document purports to be a list of twenty-four questions from a law firm representing Dr. Murati which is addressed to Mr. Kish. Another document purports to be a letter from NBI's then-attorney to Dr. Murati's attorney, briefly answering the twenty-four questions. Assuming that those documents accurately represent the twenty-four "very, very detailed questions" about which Mr. Kish testified, the brief responses do not give a complete picture of the "general condition and state of affairs" of the corporation which would allow Dr. Murati to intelligently ascertain the status of his investment. Moreover, those initial requests for information do not negate Dr. Murati's right as a shareholder to inspect pursuant to a proper written request made under R.C. 1701.37(C).

{¶24} This Court concludes that the trial court did not err by finding that Dr. Murati's request to inspect the sixteen categories of corporate information was not overly broad in regards to his enunciated purpose. The trial court found that Dr. Murati's request was candid and evidenced "his purely financially-motivated concerns." The trial court further found that NBI presented no evidence to demonstrate that Dr. Murati intended to pass on confidential corporate information to others outside the company. The evidence presented at trial indicates that all of the sixteen categories would reasonably allow a shareholder to ascertain the general condition and state of affairs of the business in a manner calculated to allow him to intelligently ascertain the status of his investment. NBI did not present any evidence at trial of any nefarious purpose by Dr. Murati. Accordingly, the trial court did not abuse its discretion in concluding that Dr. Murati has a right to inspect such information.

Burden on corporation to produce information

{¶25} NBI further argues that the trial court abused its discretion by ordering that Dr. Murati may inspect information, the production of which will cause an undue burden on the corporation. This Court disagrees.

{¶26} Dr. Murati requested to inspect the corporate records only during normal business hours, which would not place an undue burden on corporate resources.

{¶27} The trial court found that sixteen categories of documents requested could be provided "without unreasonable difficulty, most without any difficulty at all." At trial, Mr. Kish testified that it would take a "tremendous amount of work" and an "extreme amount of time" to produce the information in Dr. Murati's sixteen categories. However, upon discussing each category individually, Mr. Kish admitted that much of the information is stored both on QuickBooks in the company's internal network and in hard copy format, that the information

requested could be identified easily, and that there is very limited information pertaining to certain categories. Accordingly, the evidence indicated that NBI did not demonstrate that complying with Dr. Murati's request would place an undue burden on corporate resources. Mr. Kish also expressed a concern that much of the information is proprietary. Dr. Murati at all times, however, agreed to enter into a confidentiality agreement regarding the use and dissemination of any proprietary information, and the trial court, in fact, issued a confidentiality agreement placing limitations on Dr. Murati's use of the information he would be allowed to inspect.

{¶28} Based on Mr. Kish's concession that the requested categories of information were readily identifiable and could be produced, the trial court's order directing the production of sixteen categories of information was not unreasonable. Accordingly, the trial court did not abuse its discretion by ordering NBI to produce for inspection documents satisfying sixteen categories of information requested by Dr. Murati upon finding that such production was not overly burdensome. NBI's second assignment of error is overruled.

## DR. MURATI'S ASSIGNMENT OF ERROR

"THE TRIAL COURT ERRED IN DECLINING TO AWARD CROSS-APPELLANT PEDRO MURATI HIS ATTORNEY FEES WHEN CROSS-APPELLEE NO-BURN, INC. HAS ACTED IN BAD FAITH."

{¶29} Dr. Murati argues that the trial court erred by refusing to award him attorney fees because NBI acted in bad faith in refusing to produce the requested corporate records for inspection. This Court disagrees.

{¶30} Under Ohio law, an award of attorney fees ordinarily requires either explicit statutory authorization or a finding of bad faith on the part of the party who did not prevail. *Hall v. Frantz* (May 24, 2000), 9th Dist. No. 19630, citing *State ex rel. Pennington v. Gundler* (1996),

75 Ohio St.3d 171, 173. In regard to declaratory judgment proceedings, R.C. 2721.09 provides that a trial court may provide further relief in the nature of an award of attorney fees if the prevailing party files an application by way of a complaint for such. Dr. Murati has not pursued further relief in this manner. Instead, Dr. Murati alleges that he is entitled to an award of attorney fees solely on the basis of NBI's bad faith.

{¶31} This Court reviews a trial court's determination on a request for attorney fees for an abuse of discretion. *Hall*, supra. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore*, 5 Ohio St.3d at 219. An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons*, 66 Ohio St.3d at 621. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. Id.

{¶32} Dr. Murati requested an award of attorney fees in his counterclaim for a mandatory injunction based solely on allegations that he "has suffered additional and unnecessary expense on account of the actions of [NBI] in bringing this litigation[.]" Dr. Murati did not make any express allegations of bad faith in his counterclaim. At trial, Dr. Murati did not testify as to any express incidents of bad faith on the part of NBI. In fact, he admitted that NBI responded to his initial twenty-four questions regarding line items on company financial statements. He simply did not find the responses to be as complete as he wished. Dr. Murati also conceded that NBI had provided him with all the information he requested prior to his investing in the company and that that information consisted of unaudited financial statements. The only testimony by Dr. Murati that might have risen to an allegation of bad faith was that NBI responded to his request pursuant to R.C. 1701.37(C) by filing its complaint and that he was

concerned that the company was spending his invested money to fight his access to corporate records.

{¶33} The trial court denied Dr. Murati's request for attorney fees after finding that Mr. Kish was forthright in his testimony, that the parties did not attack one another, that Mr. Kish had an understandable concern for maintaining control of the small company "in the face of an aggressively unhappy investor," and that NBI was "entitled to be wrong" in its interpretation of the inspection statute. A thorough review of the evidence and circumstances underlying this case compels us to agree that an award of attorney fees was not warranted.

{¶34} Dr. Murati investigated NBI prior to investing and made his decision to do so based on the same type of financial information he now claims is unsatisfactory to allow him to monitor his investment. He admitted that the corporation provided all the information he requested prior to his investment. NBI responded to all of the questions regarding financial statement line items which Dr. Murati submitted to the company informally, i.e., not pursuant to a demand under the statute. Mr. Kish was concerned that the corporation would be subjected to a never-ending series of requests for inspection by Dr. Murati. At trial, Dr. Murati admitted that, even if he were allowed to inspect all the corporate records enumerated in his statutory demand, he might need to demand the inspection of additional records to satisfy his purpose. Mr. Kish testified that, prior to making a statutory demand to inspect, Dr. Murati sent him a series of emails asking to see "[p]retty much everything in the accounting department[.]" He testified that Dr. Murati further recommended that the corporation secure "at least two gophers" to bring documents to him if the corporation insisted on holding its annual shareholders' meeting off-site. At the shareholders' meeting, Dr. Murati asked further questions about the corporation's financial matters, even though Mr. Kish testified that he suggested to Dr. Murati that they discuss

those matters at a later time. NBI had valid concerns over the copying, use, and potential dissemination of its proprietary information and the trial court issued a detailed protection order by which Dr. Murati must abide. Accordingly, he was not awarded unfettered access to the requested records. At the conclusion of trial, Dr. Murati withdrew one of the categories of records from his inspection demand in recognition of the fact that "there may be in some circumstances reasons not to provide information," and "in that regard," category eighteen was withdrawn. Finally, and significantly, Dr. Murati does not dispute that the interpretation of the scope of the phrase "books and records of account" as used in R.C. 1701.37(C) is a matter of first impression in Ohio.

{¶35} Based on NBI's interaction with Dr. Murati prior to his investment, the company's provision of information arising out of the doctor's informal request, the numerous categories of information sought pursuant to a statutory request, Dr. Murati's behavior before and during the shareholder's meeting, Dr. Murati's recognition of the impropriety of one of his requests, the corporation's reasonable concerns for the improper use and dissemination of proprietary information, and the lack of any decision by the courts of Ohio defining the terms "books and records of account," NBI did not proceed in bad faith in seeking a declaration of its rights and obligations pursuant to R.C. 1701.37(C). Accordingly, the trial court did not abuse its discretion by refusing to award attorney fees to Dr. Murati. Dr. Murati's assignment of error is overruled.

III.

{¶36} NBI's assignments of error are overruled. Dr. Murati's sole assignment of error is overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant/Cross-Appellee.

DONNA J. CARR
FOR THE COURT

WHITMORE, J.
CONCURS

DICKINSON, J.
CONCURS, SAYING:

INTRODUCTION

{¶37} Concerned about his investment in No-Burn Inc., an Ohio corporation, Dr. Pedro Murati asked the company for additional information about its finances and business transactions. Dissatisfied with the answers he received, Dr. Murati demanded to inspect the

company's books and records of account under Section 1701.37(C) of the Ohio Revised Code. No-Burn filed a complaint for declaratory judgment, requesting that the trial court define its obligations under the statute. Dr. Murati counterclaimed, seeking injunctive relief and his attorney fees. The trial court determined that No-Burn had to allow Dr. Murati to inspect 16 of the 18 categories of documents he requested, but denied his claim for attorney fees. No-Burn has appealed, and Dr. Murati has cross-appealed. I agree that the judgment of the trial court should be affirmed because No-Burn forfeited its argument that the documents Dr. Murati requested are not books and records of account under Section 1701.37(C), the documents Dr. Murati requested are reasonably related to his stated purpose, and Dr. Murati failed to establish that No-Burn acted in bad faith.

## BACKGROUND

**{¶38}** According to Dr. Murati, in 2007, he invested $600,000 in No-Burn, obtaining a four-percent interest in the corporation. In 2008, he received the company's annual report, which indicated that it had not been prepared in accordance with generally accepted accounting principles. He attended a shareholder meeting to ask questions about the report and was told that he would have to make a written request if he wanted to see any documents. Dr. Murati made a written request, but No-Burn still denied him access to some of the documents he wanted. He, therefore, made a written demand to examine No-Burn's books and records of account under Section 1701.37(C). Four days later, No-Burn requested a declaratory judgment from the trial court to determine which documents it had to produce. Dr. Murati counterclaimed, seeking injunctive relief and attorney fees. Although the trial court determined that No-Burn had to provide Dr. Murati access to most of the documents he requested, it denied his claim for attorney fees.

BOOKS AND RECORDS OF ACCOUNT

{¶39} No-Burn's first assignment of error is that the trial court incorrectly ordered it to produce records to which Dr. Murati is not entitled under Section 1701.37(C) of the Ohio Revised Code. Under Section 1701.37(C), a shareholder of a corporation has the "right to examine . . . the articles of the corporation, its regulations, its books and records of account, minutes, and records of shareholders aforesaid, and voting trust agreements, if any, on file with the corporation, and to make copies or extracts thereof." No-Burn has argued that some of the documents Dr. Murati requested do not fall into any of those categories and, therefore, should not have to be produced.

{¶40} In his written demand, Dr. Murati requested 18 categories of documents, 16 of which are still at issue. The remaining 16 categories are: "1. [g]eneral ledger, all subsidiary ledgers and journals, including payroll ledger, and all books of original entry; 2. [b]ank statements, with reconciliations; 3. [c]opies of any contracts to which No-Burn is a party, including employment contracts and consulting contracts; 4. [f]inancial statements and reports, and memoranda and/or reports to management concerning internal procedures and/or financial conditions prepared by No-Burn's accountants and/or anyone else on behalf of No-Burn; 5. [c]ontracts and other documents pertaining to transactions to which No-Burn is a party; 6. [c]opies of any leases and/or agreements to lease to which No-Burn is a party; 7. [r]ecords pertaining to any securities or other investments held by or on behalf of No-Burn; 8. [c]opies of any guarantees by No-Burn of the obligation of others; 9. [r]ecords, expense reports and other documents pertaining to expense reimbursements and advances and all supporting documents related thereto, including without limitation documents pertaining to the payment of sales commissions, incurrence or payment of research and development expenses, communications

and information technology expenses, legal, accounting and other professional expenses, and expenses related to the purchase or servicing of insurance policies; 10. [r]ecords and other documents pertaining to salaries or other personnel expenses for employees or independent contractors, including without limitation payroll records; 11. [r]ecords and other documents pertaining to all inter-company transfers, transactions, loans and advances, including without limitation transactions between No-Burn, Inc. No-Burn North America, Inc. and No-Burn Investments, LLC, or between any subsidiaries of these entities; 12. [r]ecords and other documents pertaining to any and all expenses paid by No-Burn on behalf of or for the benefit of any owner, officer, employee, or related entity; 13. [c]opies of any and all bank loan applications and all supporting documents related thereto; . . . 15. [r]ecords and other documents pertaining to travel and/or travel expenses of any owner, officer, or employee for which reimbursement was requested; 16. [r]ecords and other documents related to any and all items, goods and/or services purchased by any owner, officer, or employee for which reimbursement was requested; [and] 17. [c]opies of all cellular phone service statements for which reimbursement was requested and all correspondence with cellular phone service providers related thereto[.]"

{¶41} In his written demand, Dr. Murati asserted that he was entitled to inspect the documents because they are "books and records of account." R.C. 1701.37(C). No-Burn has argued that the meaning of "books and records of account" is limited to "a corporation's accounting books that centrally memorialize in a debit/credit format the economic consequences of business agreements and transactions entered into by a corporation." According to it, the term does not include the underlying agreements that gave rise to the entries in its central accounting books. Accordingly, to the extent Dr. Murati requested copies of contracts and internal

memoranda, No-Burn has argued the trial court incorrectly ordered it to provide those documents.

**{¶42}** The trial court concluded that No-Burn forfeited its books and records of account argument because it waited until after trial to make it. Whether No-Burn forfeited its argument, however, depends on whether No-Burn or Dr. Murati had the burden of proof on that argument. If Dr. Murati had to establish that the categories of documents he requested are books and records of account and failed to present sufficient evidence on that issue, the fact that No-Burn did not make its argument at trial did not forfeit it for purposes of appeal. See *Mancino v. Capital Nat'l Bank*, 8th Dist. No. 43061, 1981 WL 4927 at \*6 (May 7, 1981) ("When findings of fact are made in actions tried by the Court without a jury, the question of the sufficiency of the evidence to support the findings may thereafter be raised whether or not the party raising the question has made in the trial court an objection to such findings or has made a motion to amend or a motion for judgment.").

**{¶43}** "At common law, the right of a shareholder to inspect the books and records of a corporation was a fundamental 'incident to ownership of stock.'" *Danziger v. Luse*, 103 Ohio St. 3d 337, 2004-Ohio-5227, at ¶6 (quoting *Cincinnati Volksblatt Co. v. Hoffmeister*, 62 Ohio St. 189, 199 (1900)). The right was based on the principle that "[t]he real owners of all the net assets of any corporation are the stockholders" and "[c]an anything be plainer than the fact that the owner of property has a clear right to inspect his own property?" *William Coale Dev. Co. v. Kennedy*, 121 Ohio St. 582, 585-86 (1930); see *Danziger*, 2004-Ohio-5227, at ¶6.

**{¶44}** Ohio codified a shareholder's right to inspect in 1884. *Celina Mut. Ins. Co. v. Am. Druggists Ins. Co.*, 52 Ohio App. 2d 304, 307 (1977). Under Revised Statute 3254, "the books and records of [a] corporation shall at all reasonable times be open to the inspection of

every stockholder." Interpreting that provision, the Ohio Supreme Court reasoned that, whatever conditions may have qualified the common law rule, the statute imposed only one condition, "that the right can be exercised only at reasonable times." *Cincinnati Volksblatt Co. v. Hoffmeister*, 62 Ohio St. 189, 198 (1900). It concluded that "[t]he right to inspect does not depend upon the motive or purpose of the stockholder in demanding such inspection, and a petition which shows that the plaintiff is a stockholder, that he has requested the defendant to allow him to inspect the books and records of the corporation, and fix a reasonable time for the same, which request has been refused, states a cause of action." *Id*. at paragraph two of the syllabus.

**{¶45}** In 1929, the legislature amended the statutory language to provide that "[t]he books of account . . . shall be open to the inspection of every shareholder at all reasonable times save and except for unreasonable or improper purposes." Ohio Gen. Code. 8623-63 (1929). Following the amendment, the Ohio Supreme Court determined that, despite the added "improper purposes" language, "[a] presumption of good faith and honesty of purpose attends a request by a stockholder for permission to inspect the books, records, and property of a corporation . . . until the contrary is made to appear by evidence produced by the officer or agent of the corporation objecting to the inspection." *William Coale Dev. Co. v. Kennedy*, 121 Ohio St. 582, syllabus (1930). It specifically determined that "[t]he burden of proof on [whether the shareholder's purpose was proper] should not be borne by the stockholder, but should be borne by the agents or officers objecting to the inspection." *Id*. at 587.

**{¶46}** Following the 1929 amendment, the Ohio Supreme Court also explained that the fact that the legislature codified the right to inspect did not change the fundamental nature of the right. "[B]y reason of his ownership of a share of stock, a shareholder is the owner of intangible

property and that property may be said to be comprised of various relationships which are determined by the terms of the stock certificate, the articles and regulations of the corporation and the statutes and common law of the state of incorporation." *Millar v. Mountcastle*, 161 Ohio St. 409, 418 (1954). It identified "[t]he right to inspect the corporate books" as one of those intangible property rights. *Id*. at 419.

{¶47} In 1955, the legislature amended the statutory language to its present form, which is at Section 1701.37(C) of the Ohio Revised Code. Under Section 1701.37(C), a shareholder must "make a *prima facie* case . . . show[ing] that 1) there was a demand for access to the documents, 2) the demand was in writing and 3) there was a specific purpose stated in the writing." *Hotchkiss v. GenBanc Inc.*, 6th Dist. No. 93-OT-016, 1994 WL 39065 at *2 (Feb. 11, 1994). While the shareholder's request must be for a "proper purpose," he remains entitled to a presumption of good faith. See *Lake v. Buckeye Steel Castings Co.*, 2 Ohio St. 2d 101, 105 (1965). Corporations still bear the burden of demonstrating that a shareholder's purpose is improper. *Id*. at 104-05 ("[W]e do not interpret [the statutory amendment] as shifting the burden of unreasonableness or impropriety from the corporation to the shareholder so as to require him to assume the burden of proving the negative, that is, that his request is free from the taint of illegality, unreasonability and impropriety."); see also Frank D. Emerson, The New Ohio General Corporation Law: Some Comments and Some Comparisons, 24 Cin. L. Rev. 463, 493 (1955) (noting that Ohio's statutory right to inspect is more favorable to shareholders than in other states).

{¶48} Although the Ohio Supreme Court has clarified parts of Section 1701.37(C), there have not been any Ohio appellate decisions regarding which party has the burden to show that a company document is or is not a book or record of account. The case law, however, does

establish some guiding principles, foremost, that the property of a corporation is the property of the shareholders by virtue of their ownership of the business. Accordingly, their right to access corporate information is broad, unless specifically limited by statute. I therefore, conclude that, although a shareholder has the minimal burden of making a written demand under Section 1701.37(C) in which he states a reasonable and proper purpose for his demand, the burden then shifts to the corporation to establish that the shareholder's purported purpose is improper or that the documents requested are not covered by statute.

{¶49} Because No-Burn had the burden of establishing that the documents Dr. Murati requested were not "books and records of account" and did not present any evidence at trial tending to prove that they were not, they forfeited any argument in that regard. Even if No-Burn had properly raised the issue, Ohio Supreme Court case law suggests that the definition of "books and records of account" includes more than a corporation's central accounting books. In *William Coale Development Co. v. Kennedy*, 121 Ohio St. 582, syllabus (1930), the Supreme Court interpreted the 1929 version of the inspection statute. Although the statute only explicitly provided access to "[t]he books of account, lists of shareholders, voting trust agreements, if any, and the minutes of meetings of every corporation," the Supreme Court wrote that what was at issue was "the right of stockholders to inspect, and take copies thereof, all books, records, papers, contracts, and other written documents, and to inspect all assets of every kind belonging to the corporation." *Id*. at 583. Concluding that the shareholders were entitled to those documents under the statute, the Supreme Court explained that "stockholders [are] not obliged to accept as 100 per cent correct statements prepared by the agents of the corporation. The stockholder may suspect mismanagement by reason of lack of dividends, or by reason of many other acts of omission or commission which he observes on the part of the agents of the

corporation. . . . The stockholder may want to check up the cash and securities represented by the books as on hand, in order to see for himself that what the books show as being on hand is in fact on hand." *Id.* at 586-87. The syllabus in *William Coale* was that a shareholder is presumed to act in good faith when seeking to inspect "the books, records, and property of a corporation," suggesting that a shareholder's right to inspect includes access to documents underlying the central accounting books from which a shareholder can make his own calculations to determine whether the corporation is being managed efficiently. *Id.* at syllabus. I, therefore, agree that No-Burn's first assignment of error should be overruled.

## OVERBROAD AND UNDULY BURDENSOME

**{¶50}** No-Burn's second assignment of error is that the trial court incorrectly issued a declaratory judgment that is overly broad and unduly burdensome. It has argued that the documents Dr. Murati requested go far beyond what is necessary to ascertain its "general condition and state of affairs," which was his declared purpose. No-Burn has argued that Dr. Murati does not need nearly every document produced by the company to determine its condition. It has also argued that it will have to expend significant time and resources to comply with his request.

**{¶51}** At trial, Dr. Murati explained that he requested No-Burn's records because the reports he had received were merely compilations and the company had never been audited, causing him to "not have any faith" in the information provided. He testified that, since the company's accountants, themselves, could not vouch for the accuracy of the provided numbers, he was concerned about their accuracy. He also testified he was concerned because the company had unidentified long-term obligations, it had not paid taxes for two years, it had an unpaid equity line, and the Chief Executive Officer had given himself a raise although the company was

losing money. He further testified that the fact that No-Burn was spending his investment money to resist giving him access to its books also concerned him.

{¶52} In *William Coale Development Co. v. Kennedy*, 121 Ohio St. 582 (1930), the Ohio Supreme Court identified suspected corporate mismanagement as a proper reason for requesting a corporation's books and records. *Id*. at 587. It acknowledged that, in such circumstances, a shareholder may want to verify that a company's books are accurate. See *id*. It also acknowledged that "[a] refusal of permission to inspect at reasonable times may itself justly excite a suspicion of unfaithful or inefficient service on the part of the agent." *Id*.

{¶53} No-Burn's assignment of error does not require this Court to determine whether Dr. Murati's corporate mismanagement suspicions were reasonable, but only whether the documents he requested would be relevant to answering his questions about the condition of the business. R.C. 1701.37, cmt. (explaining that Section 1701.37(C) "will . . . justify the corporation in refusing an examination of such of its records as are wholly irrelevant to the stated purpose."). Ledgers, financial statements, copies of contracts, internal procedure memoranda, securities records, copies of guarantees, expense reports, salary information, loan documents, and purchase invoices each relate to the overall condition of the company and could assist Dr. Murati in determining whether No-Burn is being properly managed.

{¶54} Regarding whether Dr. Murati's request would burden No-Burn, there is no express hardship exception under Section 1701.37(C). Even if there were, No-Burn's chief executive officer testified that he could produce all of the documents requested and that it would not be that difficult to produce them in electronic or hardcopy form. While he said that finding some of the documents could take a significant amount of time, he made no attempt to quantify the cost to the business.

{¶55} No-Burn has also argued that it has already provided Dr. Murati with substantial information about the company. Under Section 1701.37(C), however, Dr. Murati is entitled to inspect all of the corporation's books and records of account, not just those that its officers think he should. Accordingly, I agree that the trial court correctly ordered No-Burn to produce the remaining 16 categories of documents Dr. Murati requested and that No-Burn's second assignment of error should be overruled.

ATTORNEY FEES

{¶56} Dr. Murati's cross-assignment of error is that the trial court incorrectly denied his request for attorney's fees. "Ohio has long adhered to the 'American rule' with respect to recovery of attorney fees: a prevailing party in a civil action may not recover attorney fees as a part of the costs of litigation." *Wilborn v. Bank One Corp.*, 121 Ohio St. 3d 546, 2009-Ohio-306, at ¶7. "However, there are exceptions to this rule. Attorney fees may be awarded when a statute or an enforceable contract specifically provides for the losing party to pay the prevailing party's attorney fees . . . or when the prevailing party demonstrates bad faith on the part of the unsuccessful litigant[.]" *Id.* They may also be awarded as an element of compensatory damages if punitive damages are awarded. *Zoppo v. Homestead Ins. Co.*, 71 Ohio St. 3d 552, 558 (1994).

{¶57} In this case, there is no statutory or contract provision authorizing attorney fees, and the trial court did not award Dr. Murati punitive damages. Accordingly, to recover his attorney fees, Dr. Murati had to establish that No-Burn acted in bad faith. The Ohio Supreme Court has described bad faith as "a general and somewhat indefinite term. It has no constricted meaning. It cannot be defined with exactness. It is not simply bad judgment. It is not merely negligence. It imports a dishonest purpose or some moral obliquity. It implies conscious doing of wrong. It means a breach of a known duty through some motive of interest or ill will. It

partakes of the nature of fraud. . . . It means 'with actual intent to mislead or deceive another.'" *State ex rel. Bardwell v. Cuyahoga County Bd. of Comm'rs*, 127 Ohio St. 3d 202, 2010-Ohio-5073, at ¶8 (quoting *Slater v. Motorists Mut. Ins. Co.*, 174 Ohio St. 148, 151 (1962), overruled on other grounds by *Zoppo v. Homestead Ins. Co.*, 71 Ohio St. 3d 552 (1994)).

{¶58} No-Burn timely responded to Dr. Murati's initial requests for information and provided some documents, attempting to satisfy his inquiries. Dr. Murati was not satisfied with the information he received and made a written demand under Section 1701.37(C). Four days later, No-Burn filed for a declaratory judgment, asking the trial court to declare its responsibilities under the statute. As previously discussed, No-Burn had the right, under Section 1701.37(C), to attempt to show that Dr. Murati did not have a reasonable or proper purpose or to show that the documents he was requesting were not related to his purpose. While No-Burn failed to prove its case, there was some competent, credible evidence in the record to support the trial court's finding that it did not act in bad faith. I, therefore, agree that the trial court correctly denied Dr. Murati's claim for attorney fees and that his assignment of error should be overruled.

CONCLUSION

{¶59} No-Burn forfeited its argument that the documents Dr. Murati requested were not "books and records of account." The documents that the trial court ordered it to produce are relevant to Dr. Murati's purpose for requesting corporation information, and No-Burn failed to establish that producing the documents would unduly burden the company. Because Dr. Murati did not establish that No-Burn acted in bad faith, he was not entitled to recover his attorney fees. I agree that the judgment of the Summit County Common Pleas Court should be affirmed.

APPEARANCES:

RONALD S. KOPP and PAUL W. LOMBARDI, Attorneys at Law, for Appellant/Cross-Appellee.

FRANCES GOINS and ISAAC J. EDDINGTON, Attorneys at Law, for Appellee/Cross-Appellant.